THOMAS v McGINNIS

Docket No. 201840. Submitted January 5, 1999, at Detroit. Decided February 8, 2000, at 9:05 A.M. Leave to appeal sought.

Willie Thomas, Jr., Larry Reid, Edward A. Grant, and Phillip Miller brought an action in the Wayne Circuit Court against Kenneth L. McGinnis, the director of the Department of Corrections (DOC) in 1993 and 1994, and others, seeking damages and alleging, among other claims, liability under 42 USC 1983. The plaintiffs had been prisoners who had been convicted before December 30, 1982, of one of the crimes enumerated in Proposal B, which was codified in MCL 791.233b; MSA 28.2303(3). The DOC had interpreted the provisions of MCL 800.33(5); MSA 28.1403(5), when read in conjunction with the provisions of MCL 791.233b; MSA 28.2303(3), to mean that the sentences of persons convicted of a Proposal B crime on or after December 10, 1978, but before January 1, 1983, were entitled to earn disciplinary credit toward their minimum sentence beginning January 1, 1983, but were entitled to earn good time and special good time toward their maximum sentences from the date of their sentencing. On November 15, 1993, the Court of Appeals issued an opinion that held that prisoners sentenced for Proposal B crimes before January 1, 1983, were eligible for traditional good-time and special good-time credits toward their maximum sentences for the period up to December 30, 1982, were eligible for disciplinary credits toward their maximum and minimum sentences beginning January 1, 1983, but were not eligible for any good-time credits toward either their maximum or minimum sentences for time served after December 30, 1982. Lowe v Dep't of Corrections (After Remand), an opinion of the Court of Appeals originally designated "for publication" but later withdrawn from publication, issued November 15, 1993 (Docket No. 138095) (Lowe I). The DOC moved for a rehearing, arguing that the Court's interpretation caused the statute to violate the constitutional prohibition against ex post facto laws. The DOC continued to calculate sentence credits as it had done, and, between November 1993 and January 1994, fourteen prisoners, including the plaintiffs, were released from the custody of the DOC on the basis of sentencing credits calculated using the DOC's formula. In late January 1994, McGinnis determined that, despite the motion for rehearing, he was obligated to enforce

the Court's holding in *Lowe I*. Accordingly, ex parte motions were filed with each of the sentencing courts, seeking to rescind the discharges of the fourteen released prisoners and for arrest warrants so that those persons could be brought into court to show why they should not be returned to prison to serve the remainders of their sentences. On February 3, 1994, the Court of Appeals issued an order in *Lowe I* granting the motion for rehearing and indicating that a revised opinion would be issued in due course, if necessary; however, the order was silent concerning the precedential effect of its November 15 opinion pending the release of a revised opinion if· any. On February 7, the arrest warrants were obtained, and, on February 9 and 10, the plaintiffs were arrested. On February 17, the Court of Appeals issued an order staying the effect of its November 15, 1993, opinion in *Lowe I*. On February 18, the plaintiffs were released. In July 1994, the Court of Appeals issued its opinion on rehearing, in which it held that the DOC's method of computing sentencing credits was proper. *Lowe v Dep't of Corrections (On Rehearing)*, 206 Mich App 128 (1994). The plaintiffs thereafter commenced this action for damages. By the time of trial, the only claim remaining to be litigated was the 42 USC 1983 claim against McGinnis in his individual capacity. At the close of proofs, McGinnis moved for a directed verdict on the basis of qualified immunity, which the court, Kirsten Frank Kelly, J., granted. The plaintiffs appealed. During the pendency of the appeal, Phillip Miller died and Emma Perrymon, as personal representative of Miller's estate, was substituted as a party plaintiff.

The Court of Appeals *held*:

1. A trial court's ruling with respect to a motion for a directed verdict is reviewed de novo. A directed verdict is appropriate only when no factual question exists with regard to which reasonable minds may differ.

2. The issue of qualified immunity is one of law, and issues of law are reviewed de novo.

3. In an action brought under 42 USC 1983, a government official performing discretionary functions is entitled to qualified or good-faith immunity insofar as the official's conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. Prison officials and officers are among the government officials who may rely on qualified immunity. Immunity is not available if the official knew or should have known that the actions would violate an aggrieved person's constitutional rights or if the official acted with the malicious intention to deprive an aggrieved person of any constitutional right or otherwise to injure that person.

4. To the extent that the plaintiffs base their 42 USC 1983 claim on the assertions that they were deprived of their constitutional rights by McGinnis' decision to implement the holding in *Lowe I* and that McGinnis should have known that he was not obligated to implement that holding and that by his implementation of that holding he would violate the constitutional rights of the plaintiffs, the trial court properly concluded that McGinnis was immune from liability. The trial court properly considered that McGinnis, who was not a lawyer, sought legal advice concerning the question when a decision of the Court of Appeals becomes effective against a party for enforcement purposes and that McGinnis was advised that it was unclear whether the DOC was required to abide by and to implement immediately the Court's decision. Because there was no evidence that McGinnis' decision to implement the Court's holding was based on anything other than the legal advice he had been given, the trial court did not err in holding that McGinnis acted in good faith.

5. The trial court did not err in holding that McGinnis had immunity with respect to the alleged constitutional violations that resulted from the manner in which the holding of the Court of Appeals was implemented. Although the DOC's motions requesting the warrants and rehearings did not note that a rehearing of the *Lowe I* decision had been granted, the absence of such information did not deprive the plaintiffs of any constitutional right, because the granting of the motion for rehearing did not postpone or deprive the *Lowe I* opinion of its precedential effect. Because the information provided by McGinnis in requesting the warrants and hearings was not false or misleading, McGinnis' request was not a direct cause of any constitutional violation that resulted from the warrants having been issued by the respective courts.

6. The question whether the trial court abused its discretion in denying the plaintiffs' motion to depose the assistant attorneys general who had advised McGinnis and in precluding the calling of those attorneys as witnesses at trial has not been preserved for appellate review.

Affirmed.

CIVIL RIGHTS — ACTIONS — GOVERNMENTAL IMMUNITY — QUALIFIED IMMUNITY.

A government official performing discretionary functions is entitled to qualified or good-faith immunity in an action brought under 42 USC 1983 insofar as the official's conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known; immunity is not available if the official knew or should have known that an action undertaken by the official would violate an aggrieved person's constitutional rights or if

the official acted with the malicious intention to deprive an aggrieved person of any constitutional right or otherwise to injure that person.

*Amos E. Williams, P.C.* (by *Amos E. Williams* and *Thomas E. Kuhn*), for the plaintiffs.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Chester S. Sugierski, Jr.,* Assistant Attorney General, for the defendant.

Before: MARKMAN, P.J., and JANSEN and J. B. SULLIVAN*, JJ.

JANSEN, J. Plaintiffs[1] appeal as of right from the trial court's orders granting defendant Kenneth L. McGinnis' motion for a directed verdict and denying plaintiffs' motions to depose defense counsel and an associate and to call them as witnesses at trial. We affirm.

This case arises out of the Department of Corrections' (DOC) interpretation of MCL 800.33; MSA 28.1403, which governs prisoners' entitlement to sentence credits, as it relates to Proposal B offenders, MCL 791.233b; MSA 28.2303(3).[2] Plaintiffs, who had

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] This action was brought by Willie Thomas, Jr., Larry Reid, Edward A. Grant, and Phillip Miller. During the pendency of this appeal, Phillip Miller died, and Emma Perryman, as personal representative of Miller's estate, was substituted as a party plaintiff. For convenience, the term "plaintiffs" as used in this opinion will generally refer to the original plaintiffs, except where the context clearly suggests that the reference is to the present plaintiffs.

[2] Before December 30, 1982, Proposal B offenders could earn good-time credits, which accrued at a rate of five to fifteen days a month, toward their maximum terms but not toward their minimum terms. After December 30, 1982, Proposal B offenders could not earn good-time credits at all. Instead, they could earn disciplinary credits, which accrued at a rate of five days a month, toward their minimum and maximum sentences. On April 1, 1987, good-time credits were eliminated and all new offenders

been convicted of Proposal B offenses before December 30, 1982, were prisoners under the jurisdiction of the DOC. Defendant McGinnis was the director of the DOC, defendant Richard McKeon was McGinnis' administrative assistant, and defendant Marjorie Van Ochten was the administrator of the DOC's office of policy and hearing.

On November 15, 1993, this Court ruled in *Lowe v Dep't of Corrections (After Remand)*, an opinion of the Court of Appeals originally designated "for publication" but later withdrawn from publication, issued November 15, 1993 (Docket No. 138095) (*Lowe I*),[3] that the DOC's interpretation was incorrect and that

> Proposal B offenders incarcerated for crimes committed prior to January 1, 1983, are eligible for traditional good time and special good time credits on their maximum sentence for the period up to December 30, 1982; and, they are eligible for regular and special disciplinary credits on their maximum and minimum terms beginning January 1, 1983. Proposal B offenders are not eligible for any regular or special good time credits on their minimum sentences; nor are they eligible for any regular or special good time credits on their maximum terms after December 30, 1982.

The Attorney General, acting on behalf of the DOC, subsequently moved for rehearing of this Court's decision in *Lowe I*, arguing that this Court's interpretation

---

after that date could earn disciplinary credits only. The DOC interpreted the statutes as allowing Proposal B offenders sentenced before January 1, 1983, to earn disciplinary credits toward their minimum sentences as of January 1, 1983, and good-time credits toward their maximum sentences dating back to the time of sentencing. See *Lowe v Dep't of Corrections (On Rehearing)*, 206 Mich App 128, 132-133; 521 NW2d 336 (1994) (*Lowe II*).

[3] *Lowe I* was originally scheduled for publication but was withdrawn sometime after this Court granted rehearing on February 3, 1994.

of MCL 800.33(5); MSA 28.1403(5) violated the consti-
tutional prohibition against ex post facto laws.
Because of the pending motion for rehearing and the
DOC's inability to determine whether the motion
stayed the effect of *Lowe I*, the DOC continued to cal-
culate sentence credits as it had done in the past.
Under that interpretation, fourteen prisoners (includ-
ing the four plaintiffs) had earned sufficient credits to
be released, whereas under this Court's interpretation
in *Lowe I*, those prisoners did not have sufficient
credits to be released. As a result, the DOC released
the fourteen prisoners. Plaintiffs were released
between November 1993 and January 1994.

In late January 1994, McGinnis determined that he
was obligated to enforce *Lowe I*, despite the pending
motion for rehearing, and, therefore, the released
prisoners should be taken back into custody. He so
advised the Attorney General's office, which filed ex
parte motions in each of the sentencing courts to
rescind the discharges and for arrest warrants so that
the prisoners could be brought before the court to
show cause why they should not be returned to
prison to serve the remainder of their sentences. War-
rants were obtained on February 7, 1994, and plain-
tiffs were arrested on February 9 and 10, 1994. The
sentencing court that authorized the warrants for
plaintiffs Reid and Miller declined to hold a show
cause hearing, but another sentencing court, which
had authorized the warrant for plaintiff Grant, sched-
uled a hearing for February 18, 1994.

In the meantime, on February 3, 1994, this Court
issued an order granting the motion for rehearing of
*Lowe I*. The order stated that "a revised opinion will
be issued in due course if the Court determines that

such an opinion is appropriate," but was otherwise silent regarding the effect of the decision in *Lowe I* pending release of a revised opinion, if any. On February 17, 1994, however, this Court issued another order staying the effect of its decision in *Lowe I*. Once notified of the order staying the effect of *Lowe I*, the DOC released the prisoners who had been arrested. Plaintiffs were all released on February 18, 1994.[4]

Plaintiffs later filed this action on May 12, 1995. Plaintiffs alleged claims of abuse of process, false arrest, false imprisonment, denial of due process under the state and federal constitutions, violation of the protection against double jeopardy under the state and federal constitutions, intentional infliction of emotional distress, intentional interference with economic relations, and liability for damages stemming from plaintiffs' temporary reincarcerations under 42 USC 1983.[5] The parties later stipulated the dismissal of the claims of intentional infliction of emotional distress and intentional interference with economic relations. The trial court granted summary disposition in favor of defendants with regard to the claims of abuse of process, false arrest, and false imprisonment. With regard to defendants Van Ochten

---

[4] On July 5, 1994, this Court issued its decision on rehearing in *Lowe II*, concluding that *Lowe I* was incorrect and that the DOC's interpretation of the law "conforms to the legislative scheme in a way that is consistent with the intent behind MCL 800.33(5); MSA 28.1403(5), as well as the constitutional prohibition against ex post facto laws." *Lowe II, supra* at 135-136.

[5] On October 11, 1995, an amended order for consolidation was filed by the Court of Claims, consolidating this case with *Reid v Dep't of Corrections*, 239 Mich App 621; ___ NW2d ___ (2000), also issued this day. The consolidated cases were then transferred to the Wayne Circuit Court, which sat as the Court of Claims in the action against the Department of Corrections and as the circuit court in this case. Additional facts and procedural history have been set forth in our decision in *Reid*.

and McKeon, all claims against those two defendants were dismissed on the basis of governmental immunity in that plaintiffs' complaint failed to allege that their actions were grossly negligent. MCL 691.1407(2)(c); MSA 3.996(107)(2)(c). Although the trial court specifically allowed plaintiffs to amend the complaint in order to plead with specificity the actions comprising gross negligence so as to avoid governmental immunity, plaintiffs did not amend their complaint in this manner. Thus, all claims against defendants Van Ochten and McKeon were dismissed before trial and they are not parties on appeal.

Before trial, plaintiffs stipulated the dismissal of the constitutional tort claims against defendant McGinnis. The only remaining claim against McGinnis was that alleged under 42 USC 1983 in McGinnis' individual capacity.[6] At the close of the proofs, McGinnis moved for a directed verdict on the basis of qualified immunity, and the trial court granted the motion, finding that he was entitled to qualified immunity.

The trial court's ruling with respect to a motion for a directed verdict is reviewed de novo. *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997). In reviewing the trial court's ruling, this Court views the evidence presented up to the time of the motion in the light most favorable to the nonmov-

---

[6] We acknowledge that neither a state nor its officials acting in their official capacities are "persons" under § 1983, and thus cannot be sued under § 1983. *Will v Michigan Dep't of State Police*, 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989), affirming *Smith v Dep't of Public Health*, 428 Mich 540, 544; 410 NW2d 749 (1987); *Jones v Powell*, 227 Mich App 662, 669; 577 NW2d 130 (1998); *Carlton v Dep't of Corrections*, 215 Mich App 490, 502; 546 NW2d 671 (1996). However, in the amended complaint, defendant McGinnis was sued in his individual capacity; thus, he is not protected by the holding of *Will* and *Smith*. See *Goodmon v Rockefeller*, 947 F2d 1186, 1187 (CA 4, 1991).

ing party, grants that party every reasonable inference, and resolves any conflict in the evidence in that party's favor to decide whether a question of fact existed. *Hatfield v St Mary's Medical Center*, 211 Mich App 321, 325; 535 NW2d 272 (1995). A directed verdict is appropriate only when no factual question exists regarding which reasonable minds may differ. *Meagher, supra* at 708. The issue of qualified immunity is one of law, *Spruytte v Owens*, 190 Mich App 127, 132; 475 NW2d 382 (1991), and issues of law are reviewed de novo. *Forge v Smith*, 458 Mich 198, 204; 580 NW2d 876 (1998).

In an action brought under 42 USC 1983, a government official performing discretionary functions is entitled to qualified or good-faith immunity " 'insofar as [the official's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Guider v Smith*, 431 Mich 559, 565; 431 NW2d 810 (1988), quoting *Harlow v Fitzgerald*, 457 US 800, 818; 102 S Ct 1717; 73 L Ed 2d 396 (1982). Prison officials and officers are among the government officials who may rely on qualified immunity. *Procunier v Navarette*, 434 US 555, 561; 98 S Ct 855; 55 L Ed 2d 24 (1978). "For a constitutional right to be clearly established, 'the law must be clear in regard to the official's particular actions in the particular situation.' " *Walton v Southfield*, 995 F2d 1331, 1335 (CA 6, 1993), quoting *Long v Norris*, 929 F2d 1111, 1114 (CA 6, 1991).

> Thus the particular conduct of the official must fall clearly within the area protected by the constitutional right, such that a reasonable official would have known that his or her conduct violated the constitutional right. . . . This "objective reasonableness" standard focuses on whether

> defendants reasonably could have thought that their actions were consistent with the rights that plaintiff claims have been violated. [*Walton, supra* at 1336.]

"[T]o be clearly established, a question must be decided either by the highest state court in the state where the case arose, by a United States Court of Appeals, or by the Supreme Court." *Robinson v Bibb*, 840 F2d 349, 351 (CA 6, 1988). "In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law," but such decisions "must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Ohio Civil Service Employees Ass'n v Seiter*, 858 F2d 1171, 1177 (CA 6, 1988). Immunity is not available if the official knew or should have known that the actions would violate the plaintiff's constitutional rights or if the official acted with the malicious intention to deprive the plaintiff of his constitutional rights or otherwise injure the plaintiff. *Procunier, supra* at 562.

Liability under 42 USC 1983 is predicated on "the deprivation of any rights, privileges or immunities secured by the Constitution and laws" of the United States. The applicable law cited in plaintiffs' amended complaint was the right to due process under US Const, Am XIV and the prohibition against double jeopardy under US Const, Am V. Although not specifically alleged in their complaints, plaintiffs also relied heavily on the prohibition against ex post facto laws, US Const, art I, §§ 9 and 10. All claims are derived from McGinnis' decision to implement *Lowe I.*

To the extent that plaintiffs base their claim on McGinnis' decision itself, i.e., that he should have known that he was not obligated to implement the holding in *Lowe I* and that by doing so he violated plaintiffs' constitutional rights, the trial court properly concluded that he was immune from liability. There was no clearly established reported case law defining the time that a published Court of Appeals decision became effective between the parties or holding that implementing a decision that has not become effective could constitute a violation of any constitutional rights. McGinnis, not being a lawyer, did not know if *Lowe I* was effective for enforcement purposes upon its release and was unable to obtain a satisfactory answer from the lawyers who advised him. They gave him two courses of action to take, indicating that either would be appropriate, and he chose one. The trial court properly considered the fact that McGinnis sought out and relied on the advice of counsel before acting, *Guider, supra* at 571, n 10, and found that he acted in good faith in doing so. There being no evidence to show that McGinnis' decision resulted from anything other than the legal advice he was given, we find that the trial court did not err in ruling that he acted in good faith, there being no factual dispute regarding this matter.

To the extent that plaintiffs claim that the acts that followed from McGinnis' decision, i.e., their return to prison without a court hearing, violated their constitutional rights, the trial court's ruling was also not erroneous. There was clearly established law that a statute "enacted after the date of a prisoner's sentence that attempts to reduce the amount of credit given for good behavior—and that, in effect, increases

the prisoner's sentence—violates the constitutional prohibition against ex post facto laws. *Lowe v Dep't of Corrections (On Rehearing)*, 206 Mich App 128, 137; 521 NW2d 336 (1994) (*Lowe II*). The constitutional prohibition against ex post facto laws precludes Congress and state legislatures from enacting such laws. US Const, art I, §§ 9 and 10. By analogy, it has been extended to judicial decisions. *People v Doyle*, 451 Mich 93, 99-100; 545 NW2d 627 (1996). Plaintiffs have not shown a clearly established law that extends the prohibition to a government official's or agency's interpretations of a law. Even assuming it could be extended to such a situation, *Lowe I* held that the statute, as amended, did not violate the Ex Post Facto Clause if applied to Proposal B offenders sentenced before April 1, 1987, and, although McGinnis believed that holding was erroneous, he could reasonably rely on this Court's ruling.

There was clearly established law that the Due Process Clause "require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 313; 70 S Ct 652; 94 L Ed 865 (1950). McGinnis, through the Attorney General, attempted to comply with this law by requesting authorization to arrest plaintiffs and bring them before the respective sentencing courts for hearings regarding their return to prison. One sentencing court denied the request for a hearing, and another sentencing court set a hearing date a week or more in the future, by which time plaintiffs had been released. Because it was the sentencing courts' issuance of the ex parte orders for plaintiffs' arrest and not McGinnis'

request that such orders be entered that caused the plaintiffs to be arrested, McGinnis' request was not the direct cause of any constitutional violation that may have occurred, unless he had provided false and misleading information to the courts. See *Mudge v Macomb Co*, 458 Mich 87, 104; 580 NW2d 845 (1998); *Mayor of the City of Lansing v Knights of the Ku Klux Klan (After Remand)*, 222 Mich App 637, 647-649; 564 NW2d 177 (1997). Although the motions and affidavits did not mention that the motion for a rehearing had been granted in *Lowe I*, the decision to grant a rehearing did not deprive the *Lowe I* opinion of its precedential effect, MCR 7.215(C)(2); cf. *Riley v Northland Geriatric Center*, 425 Mich 668, 681; 391 NW2d 331 (1986), after remand 431 Mich 632; 433 NW2d 787 (1988), amended sub nom *Juncaj v C & H Industries*, 432 Mich 1219; 434 NW2d 644 (1989) (holding that the filing of a motion for rehearing or the granting thereof does not postpone or deprive a previous Supreme Court opinion of its precedential effect), and see *Straman v Lewis*, 220 Mich App 448, 451; 559 NW2d 405 (1996) (a published decision of this Court is precedentially binding on this Court and all lower courts until a decision of the Supreme Court is entered altering this Court's decision or questioning its rationale), and thus disclosure of that information or any reservations McGinnis or the Attorney General may have had regarding the correctness of its holding would not have changed the fact that the sentencing courts were required to follow it. Pursuant to *Lowe I*, the sentencing courts would have had to conclude that plaintiffs' discharges were improper because they were based on an improper calculation of sentence credits, the effect of which was to require plaintiffs to

complete the sentences from which they had been discharged improperly and not the imposition of a new sentence. See *Michigan ex rel Oakland Co Prosecutor v Dep't of Corrections*, 199 Mich App 681, 694-695; 503 NW2d 465 (1993); *People v Young*, 206 Mich App 144, 150; 521 NW2d 340 (1994), rev'd on other grounds sub nom *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569; 548 NW2d 900 (1996). Therefore, returning plaintiffs to prison to complete their original sentences would not have constituted a violation of the constitutional prohibition against double jeopardy. Thus, the trial court did not err in granting defendant's motion for a directed verdict on the basis of qualified immunity.

Plaintiffs also contend that the trial court abused its discretion in denying their motion to depose the assistant attorneys general who advised McGinnis and in precluding plaintiffs from calling them as witnesses at trial. This issue has not been preserved for appeal because plaintiffs have not cited any authority in support of their position, *Price v Long Realty, Inc*, 199 Mich App 461, 467; 502 NW2d 337 (1993), and have failed to provide the transcript from the hearing regarding the motion to compel. *Admiral Ins Co v Columbia Casualty Ins Co*, 194 Mich App 300, 304-305; 486 NW2d 351 (1992). We therefore decline to consider it, there being no record for us to review.

Affirmed.

MARKMAN, P.J., did not participate.