REID v STATE OF MICHIGAN

Docket No. 201810. Submitted January 5, 1999, at Detroit. Decided February 8, 2000, at 9:00 A.M. Leave to appeal sought.

Larry Reid and three other former inmates who had been in the custody of the Department of Corrections brought an action in the Court of Claims against the state of Michigan and the Department of Corrections, alleging and seeking damages for violations of their constitutional right to due process. The plaintiffs had been convicted of Proposal B offenses, MCL 791.233b; MSA 28.2303(3), and had been released by the department after serving terms reduced pursuant to the department's interpretation of MCL 800.33; MSA 28.1043 regarding good-time credits and disciplinary credits for Proposal B offenders. That statutory interpretation had been found incorrect by the Court of Appeals in *Lowe v Dep't of Corrections (After Remand)*, an opinion of the Court of Appeals originally designated "for publication" but later withdrawn from publication, issued November 15, 1993 (Docket No. 138095) (*Lowe I*). The Attorney General, at the request of the director of the Department of Corrections, filed ex parte motions in the courts that sentenced the plaintiffs to have their discharges rescinded and to have them arrested pursuant to warrants so that they could serve terms that were made longer by the invalidation in *Lowe I* of the department's statutory interpretation. The plaintiffs were arrested and reincarcerated. The Court of Appeals granted a rehearing of *Lowe I*, stayed the effect of its decision in *Lowe I*, and, in *Lowe v Dep't of Corrections (On Rehearing)*, 206 Mich App 128 (1994), ultimately held that the department had been correct in its statutory interpretation. The department released the plaintiffs when the effect of *Lowe I* was stayed. After trial in the Court of Claims, the court, Kirsten Frank Kelly, J., awarded damages to the plaintiffs, finding due process violations with respect to the plaintiffs' arrest without probable cause, administrative segregation without a hearing and with denial of certain prisoner privileges, and the absence of a hearing following arrest and before reincarceration. The defendants appealed.

The Court of Appeals *held*:

1. The trial court lacked authority to find that the defendants were liable under the theory that the plaintiffs were arrested with-

out probable cause. The plaintiffs did not allege a violation premised on a lack of probable cause, nor did they move after trial for an amendment of their complaint to conform to the proofs.

2. The trial court erred in finding the defendants liable on the basis that the plaintiffs were held in administrative segregation and were denied certain prisoner privileges. The trial court had granted a pretrial motion to strike the claim regarding administrative segregation. The plaintiffs did not prove that they had a constitutional right to certain privileges after being returned to prison.

3. The trial court erred in finding the defendants liable on the basis that the plaintiffs were not afforded a hearing before reincarceration. Any due process violation occasioned by the absence of a hearing stemmed not from the defendants' decision to seek warrants, but from the sentencing courts' determinations that a hearing was not necessary. The department did not engage in misconduct in not attaching to the ex parte motions information about the grant of a rehearing in *Lowe I*. The inclusion of such information would not have made a difference because *Lowe I* was binding on the sentencing courts until withdrawn from publication.

Reversed and remanded.

1. CONSTITUTIONAL LAW — CONSTITUTIONAL TORTS BY THE STATE.

Governmental immunity is not available in a state court action where it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution; the state is liable for a violation of the state constitution only in cases where a state custom or policy mandated the official's or employee's actions.

2. COURTS — RELIEF — CLAIMS.

A trial court does not have the authority to grant relief based on a claim that was never pleaded in a complaint or requested at any time before or during trial.

3. PLEADINGS — POSTTRIAL AMENDMENT.

Trial courts have the power to allow posttrial amendment of pleadings to conform to the proofs absent a showing of surprise or prejudice.

*Amos E. Williams, P.C.* (by *Amos E. Williams* and *Thomas E. Kuhn*), for the plaintiffs.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Chester S. Sugierski, Jr.*, Assistant Attorney General, for the defendants.

Before: MARKMAN, P.J., and JANSEN and J. B. SULLIVAN*, JJ.

JANSEN, J. Defendants appeal as of right from a judgment in plaintiffs' favor following a bench trial. Specifically, defendants appeal from the trial court's previous order denying their motion for summary disposition. We reverse and remand for entry of judgment in favor of defendants.

This case[1] arises out of the Department of Corrections' (DOC) interpretation of MCL 800.33; MSA 28.1403, which governs prisoners' entitlement to sentence credits, as they relate to Proposal B offenders, MCL 791.233b; MSA 28.2303(3). Plaintiffs had all been convicted of Proposal B offenses before December 30, 1982, and were all under the jurisdiction of the DOC. Kenneth McGinnis was the director of the DOC, Marjorie Van Ochten was the administrator of the DOC's office of policy and hearing, and Richard McKeon was McGinnis' administrative assistant.

Before December 30, 1982, Proposal B offenders could earn good-time credits, which accrued at a rate of five to fifteen days a month, toward their maximum terms but not toward their minimum terms. After December 30, 1982, Proposal B offenders could not earn any good-time credits; however, they could earn disciplinary credits, which accrued at a rate of

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] The companion to this case, *Thomas v McGinnis*, 239 Mich App 636; ___ NW2d ___ (2000), also being issued today, involves claims against individual officials working for the Department of Corrections. The claims in this case were filed in the Court of Claims in August 1994. The claims in *Thomas v McGinnis* were filed in the Wayne Circuit Court in May 1995. The cases were ultimately consolidated before the same judge in the Wayne Circuit Court, acting as the Court of Claims in the present case.

five days a month, toward their minimum and maximum sentences. On April 1, 1987, good-time credits were eliminated and all new offenders after that date could earn disciplinary credits only. The DOC interpreted the statutes as allowing Proposal B offenders sentenced before January 1, 1983, to earn disciplinary credits toward their minimum sentences as of January 1, 1983, and good-time credits toward their maximum sentences dating back to the time of the sentencing. See *Lowe v Dep't of Corrections (On Rehearing)*, 206 Mich App 128, 131-133; 521 NW2d 336 (1994) (*Lowe II*).

The DOC's calculation of good-time and disciplinary credits led the plaintiff in *Lowe* to request a writ of mandamus to compel the DOC to grant disciplinary credits against his maximum sentence. This Court ruled in *Lowe v Dep't of Corrections (After Remand)*, an opinion of the Court of Appeals originally designated "for publication" but later withdrawn from publication, issued November 15, 1993 (Docket No. 138095) (*Lowe I*),[2] that the DOC's interpretation was incorrect and that

> Proposal B offenders incarcerated for crimes committed prior to January 1, 1983, are eligible for traditional good time and special good time credits on their maximum sentence for the period up to December 30, 1982; and, they are eligible for regular and special disciplinary credits on their maximum and minimum terms beginning January 1, 1983. Proposal B offenders are not eligible for any regular or special good time credits on their minimum sentences; nor are they eligible for any regular or special good time credits on their maximum terms after December 30, 1982.

---

[2] *Lowe I* was originally scheduled for publication but was withdrawn sometime after this Court granted rehearing.

The Attorney General, acting on behalf of the DOC, subsequently moved for rehearing of this Court's decision in *Lowe I*, arguing that this Court's interpretation of MCL 800.33(5); MSA 28.1403(5) violated the constitutional prohibition against ex post facto laws. Because of the pending motion for rehearing and the DOC's inability to determine whether the motion stayed the effect of *Lowe I*, the DOC continued to calculate sentence credits as it had done in the past. Under that interpretation, fourteen prisoners (including these four plaintiffs) had earned sufficient credits to be released, whereas under this Court's interpretation in *Lowe I*, those prisoners did not have sufficient credits to be released. As a result, the DOC released the fourteen prisoners. Plaintiffs in this matter were released between November 1993 and January 1994.

In January 1994, McGinnis determined that he was obligated to enforce *Lowe I* after discussions with assistant attorneys general regarding the effect of *Lowe I*, despite the pending motion for rehearing, and, therefore, the released prisoners should be taken back into custody. McGinnis so advised the Attorney General's office, which filed ex parte motions in each of the sentencing courts to rescind the discharges and for arrest warrants so that the prisoners could be brought before the court to show cause why they should not be returned to prison to serve the remainder of their sentences. Warrants were obtained on February 7, 1994, and plaintiffs were arrested on February 9 and 10, 1994. The circuit court that authorized the warrants for plaintiffs Larry Reid and Phillip Miller declined to hold a show cause hearing, although another circuit court, which had authorized

the warrant for plaintiff Edward Grant, scheduled a hearing for February 18, 1994.

However, on February 3, 1994, this Court issued an order granting the motion for rehearing of *Lowe I*. The order stated that "a revised opinion will be issued in due course if the Court determines that such an opinion is appropriate," but was otherwise silent regarding the effect of the decision in *Lowe I* pending release of a revised opinion, if any. On February 17, 1994, however, this Court issued another order staying the effect of its decision in *Lowe I*. Once the DOC was notified of the order staying the effect of *Lowe I*, it released the prisoners who had previously been arrested and taken back into custody. Plaintiffs were all released on February 18, 1994. Ultimately, on July 5, 1994, this Court issued its decision on rehearing, concluding that *Lowe I* was incorrect and that the DOC's interpretation of the law "conforms to the legislative scheme in a way that is consistent with the intent behind MCL 800.33(5); MSA 28.1403(5), as well as the constitutional prohibition against ex post facto laws." *Lowe II, supra* at 135-136.

Plaintiffs filed this suit in the Court of Claims on August 18, 1994. Plaintiffs alleged claims of abuse of process, false arrest, false imprisonment, denial of due process under the state constitution, and violation of the constitutional protection against double jeopardy. This case was then consolidated with *Thomas v McGinnis*, 239 Mich App 636; ___ NW2d ___ (2000), in the Wayne Circuit Court. The Court of Claims, in an order dated July 24, 1996, granted summary disposition in favor of the state defendants with regard to the claims of abuse of process, false arrest,

and false imprisonment. Thus, only the constitutional tort claims survived.

This case was tried before the Court of Claims, acting in the Wayne Circuit Court. The Court of Claims issued its opinion on the record on February 19, 1997. The court stated, "The sole remaining issue after trial is whether or not the defendants MDOC and State of Michigan violated the plaintiff[s'] consti[tu]tional rights and if so the amount of damages if any." The court found that plaintiffs' constitutional tort claims had been established at trial in that plaintiffs successfully proved that defendants adopted an official custom or policy that mandated the action and deprived the plaintiffs of their rights protected by the state constitution. The court also found that this policy and its implementation violated the plaintiffs' constitutional rights to be free from arrest and imprisonment without probable cause and deprived them of due process of law.

With regard to damages, the Court of Claims found that plaintiff Reid had been discharged from prison on December 3, 1993, was rearrested on February 9, 1994, and was incarcerated until February 18, 1994. Reid was awarded $25,000. The court found that plaintiff Grant was discharged on January 13, 1994, rearrested on February 9, 1994, and incarcerated until February 18, 1994. Grant was awarded $30,000. Plaintiff Miller was discharged from prison on November 24, 1993, rearrested on February 9, 1994, and incarcerated until February 18, 1994. The court awarded Phillip Miller $15,000.[3] Plaintiff Thomas was dis-

---

[3] Miller died on December 16, 1994, while this appeal was pending, and Emma Perryman, personal representative of Miller's estate, was substituted as plaintiff.

charged from prison on December 31, 1993, rearrested on February 10, 1994, and incarcerated until February 18, 1994. The court awarded plaintiff Thomas $25,000.

On appeal, defendants argue, through the Attorney General, that the Court of Claims' decision must be reversed because the DOC has a duty to follow a decision of this Court (the decision in *Lowe I*), that the Court of Claims improperly imposed legal duties on defendants regarding the manner in which the plaintiffs were arrested, and that plaintiffs failed to establish a constitutional tort because they failed to establish the existence of an official custom or policy mandating the officials' actions.

In *Smith v Dep't of Public Health*, 428 Mich 540, 544; 410 NW2d 749 (1987), a majority of our Supreme Court held that "[w]here it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available in a state court action." The Court further held that a "claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases." *Id.* Although an appropriate analysis for determining whether a constitutional tort had been established did not garner a majority opinion, Justice BOYLE's extensive analysis of this issue has generally been utilized by this Court. Thus, this Court has held that liability for a violation of the state constitution should be imposed on the state only where the state's liability would, but for the Eleventh Amendment, render it liable under the standard for local governments as set forth in 42 USC 1983 and articulated in *Monell v New York City Dep't of Social Services*, 436

US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978). *Carlton v Dep't of Corrections*, 215 Mich App 490, 504; 546 NW2d 671 (1996), citing *Smith, supra* at 642 (BOYLE, J.). Therefore, the state will be liable for a violation of the state constitution only in cases where a state custom or policy mandated the official's or employee's actions. *Carlton, supra* at 505.

In the present case, the two constitutional torts alleged were a violation of the protection against double jeopardy (Const 1963, art 1, § 15) and a violation of due process (Const 1963, art 1, § 17). As this Court stated in *77th Dist Judge v Michigan*, 175 Mich App 681, 693; 438 NW2d 333 (1989), "[t]ypically, a constitutional tort is committed by a governmental employee exercising discretionary powers so that constitutional rights personal to the plaintiff are thereby violated." The Court of Claims found that the plaintiffs' due process rights were violated because the DOC had implemented a policy decision because of this Court's opinion in *Lowe I* to rearrest the prisoners who had been discharged. The court specifically found that the policy decision and subsequent implementation of it violated the plaintiffs' rights to be free from arrest and imprisonment without probable cause and deprived them of due process of law. The court rejected defendants' claim that the decision in *Lowe I* provided them with probable cause to seek the plaintiffs' return to prison. The court likewise found that the issuance of the arrest warrant by the circuit courts did not relieve defendants of liability because the warrants were improperly secured by withholding pertinent information from the issuing courts. The court also found that the denial of hearings either before the plaintiffs were returned to prison or at

prison violated their rights to due process. The court did not find any double jeopardy violation as a basis for liability.

To the extent that the court imposed liability on the basis that the arrests were not based on probable cause, we must reverse that finding because at no time did plaintiffs ever allege a violation premised on a lack of probable cause (Const 1963, art 1, § 11). A trial court does not have the authority to grant relief based on a claim that was never pleaded in a complaint or requested at any time before or during trial. See *Peoples Savings Bank v Stoddard*, 359 Mich 297, 325; 102 NW2d 777 (1960); *City of Bronson v American States Ins Co*, 215 Mich App 612, 619; 546 NW2d 702 (1996). Further, although trial courts have the power to allow posttrial amendment of pleadings to conform to the proofs absent a showing of surprise or prejudice, *Gorelick v Dep't of State Hwys*, 127 Mich App 324, 338; 339 NW2d 635 (1983), plaintiffs never moved to amend their complaint to conform to the proofs. Accordingly, because a claim that plaintiffs' arrests lacked probable cause was never pleaded or tried by express or implied consent of the parties, see MCR 2.118(C), the court lacked authority to find that defendants were liable to plaintiffs on the theory that plaintiffs' constitutional rights were violated because they were arrested without probable cause.

Likewise, the court's finding that the decision to place plaintiffs in administrative segregation without a hearing and the alleged denial of various privileges afforded to prisoners[4] constituted a deprivation of

---

[4] The "privileges" noted by the court include that no information was provided to plaintiffs regarding their status, that they were denied regular

plaintiffs' constitutional rights to due process must be reversed. In the joint final pretrial order, defendants moved to strike this aspect of plaintiffs' claim because it had never been raised in the complaint and the court granted defendants' motion. More specifically, the court held that the fact that plaintiffs may have been held in administrative segregation after being returned to prison was admissible to prove damages, but could not be used as a basis for plaintiffs' claim that their due process rights had been violated. Therefore, because this claim was not properly before the court, the court erred in finding that plaintiffs had been placed in administrative segregation without a hearing and predicating liability on that basis. Further, plaintiffs did not prove that they had a constitutional right to certain privileges after being returned to prison or that defendants deprived them of a constitutional right pursuant to an official policy or custom. See *Marlin v Detroit (After Remand)*, 205 Mich App 335, 338; 517 NW2d 305 (1994). Accordingly, it was error for the court to predicate liability against defendants on the basis that plaintiffs' constitutional due process rights were violated because of their being held in administrative segregation after being returned to prison and that they were denied certain privileges in prison.

This leaves only the claim that plaintiffs were denied due process upon their arrest (after being discharged from prison) because they were not given a hearing. Specifically, the due process claim was predicated on the fact that plaintiffs did not receive hear-

---

access to telephone calls, that they were denied responses to grievances, and that there was no access to attorneys or the law library.

ings in the circuit courts following their arrest and before they were again imprisoned. Defendants contend that because the DOC was acting pursuant to this Court's decision in *Lowe I*, a decision that it was bound to follow, there was no constitutional violation and the DOC was not acting pursuant to a policy or custom, but pursuant to a decision of this Court that it was obligated to follow. The court rejected defendants' argument, both at trial and when defendants moved for summary disposition, ruling that the *Lowe I* decision was not effective and, therefore, the DOC was not obligated to follow it.

Although the parties analyzed at length whether the DOC was obligated to follow this Court's decision in *Lowe I*, we do not believe that whether the DOC was or was not obligated to follow that decision affects the question whether the plaintiffs were afforded due process during the arrest and reincarceration proceedings. At trial, there was testimony from McGinnis that he decided to implement this Court's decision in *Lowe I* on January 20, 1994, following a great deal of discussion with attorneys in the Attorney General's office. McGinnis further decided to obtain authorization from the sentencing courts to arrest those prisoners who had been released because of the initial failure to immediately implement *Lowe I*. Having decided to regain custody of the discharged prisoners, McGinnis stated that he understood that the Attorney General's office would prepare petitions and present them to the sentencing courts so that the prisoners could be taken into custody to complete their sentences. The Attorney General's office prepared ex parte motions supported by an affidavit signed by McGinnis. McGinnis further testified that

the DOC cannot incarcerate a person without a court order placing that person under the jurisdiction of the DOC.

Additionally, there was testimony from Van Ochten that due process required that a hearing be conducted to determine whether the prisoners, following their arrest, should be returned to the jurisdiction of the DOC. Van Ochten testified that the warrants were requested by the DOC, and it was her understanding that the prisoners would be brought before the sentencing courts to determine whether they should be returned to prison. Van Ochten was personally unaware whether the prisoners actually received hearings following their arrest, that being a matter for the sentencing courts to handle. Moreover, Van Ochten testified that the DOC is not responsible for affording the prisoners a hearing following the arrest because "the issue of whether their sentence is properly carried out would be a sentence of the court."

Apparently, none of the plaintiffs in this case actually had a hearing before the sentencing court to determine whether they should be returned to prison. Although this fact that plaintiffs never received a hearing after their arrests, and before they were again incarcerated, may well constitute a due process violation, we believe that the actions of the sentencing courts, and not the DOC or the state of Michigan, is the cause of this alleged constitutional violation. In other words, it was not defendants' decision to seek the warrants, but the sentencing courts' decision that no hearing was necessary that caused any constitutional deprivation. Accordingly, defendants are not liable for any due process violation because defendants' conduct did not cause plaintiffs to not receive a

hearing following their arrests. See *Mayor of the City of Lansing v Knights of the Ku Klux Klan (After Remand)*, 222 Mich App 637, 644-650; 564 NW2d 177 (1997) (Under a § 1983 action, there is no tort liability on the part of a person who seeks an injunction where the injunction is erroneously issued because any resulting injury is caused by the act of the court erroneously issuing the injunction, not by any act of the party seeking the injunction.).

Further, we cannot conclude that the DOC engaged in misconduct that tainted the process such that the court's decision cannot be separated from the DOC's misconduct. *Id.* at 651. The Court of Claims found that material facts were omitted from the ex parte motions for the arrest warrants and had those facts been included, they would have made a difference to the sentencing courts issuing the arrest warrants. These material facts as stated by the court were that a rehearing had been filed in *Lowe I*, that the rehearing was granted, that a copy of the opinion in *Lowe I* was not attached to the ex parte motions, and that "the Court of Appeals was contrary to Michigan Supreme Court precedent." The court's finding in this regard is clearly erroneous because the one sentencing court that testified at trial stated that it did not think that the DOC even required a warrant and did not believe that a hearing following the arrests was necessary. The sentencing court also testified that it could not say if it would have done anything differently had the information been included. Moreover, regardless of the status concerning the motion for rehearing, the sentencing courts were bound under the rule of stare decisis to follow this Court's decision in *Lowe I* until *Lowe I* was withdrawn from publica-

tion because it was binding on this Court and all lower courts until withdrawn. MCR 7.215(C)(2). Thus, the DOC did not engage in misconduct by withholding "material facts" since those facts would not have led to a different result because *Lowe I* was binding on the lower courts until withdrawn from publication.

Therefore, we do not believe that the present case is an "appropriate case" in which to impose a damages remedy for an alleged constitutional violation by the state. Plaintiffs have not proved a constitutional tort by the state or its agency. The Court of Claims' verdict in favor of plaintiffs must be reversed because the alleged constitutional torts have not been proved and we remand for a verdict in favor of defendants.

Reversed and remanded.

MARKMAN, P.J., did not participate.