THOMAS v DEPUTY WARDEN, STATE PRISON
OF SOUTHERN MICHIGAN

Docket No. 226992. Submitted January 8, 2002, at Detroit. Decided February 12, 2002, at 9:05 A.M.

Willie Thomas and others brought an action pursuant to 42 USC 1983 in the Wayne Circuit Court against Jim Pogats, deputy warden of the State Prison of Southern Michigan, alleging that the defendant deprived them of due process rights. Following a statutory change in the manner in which good-time and disciplinary credits were calculated, the plaintiffs had been discharged from prison on the basis of the Department of Corrections interpretation of the amended statutes. That interpretation was determined to be incorrect by the Court of Appeals, WAHLS, P.J., and SHEPHERD and CAVANAGH, JJ., in *Lowe v Dep't of Corrections (After Remand)*, an unpublished opinion issued November 15, 1993 (Docket No. 138095), and the plaintiffs were reincarcerated on the basis of the *Lowe* decision until the Court of Appeals stayed the effect of *Lowe*. For five days during the plaintiffs' reincarceration, the defendant, without a hearing having been conducted, ordered that the plaintiffs be restricted to their cells because of a lack of information concerning the plaintiffs' backgrounds, convictions, and histories of assaultive behavior while in custody, and a lack of information about whether the plaintiffs had enemies among the other prisoners. The plaintiffs base their claim of deprivation of due process on the restrictive placement ordered without a hearing and on an alleged denial of basic necessities such as toothbrushes, paper, stamps, and pencils. A jury returned a verdict and award of damages for the plaintiffs. The court, Robert L. Ziolkowski, J., denied the defendant's motion for judgment notwithstanding the verdict and entered a judgment consistent with the verdict. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. The plaintiffs' restrictive placement did not constitute a deprivation of a protected liberty interest that violated due process. The proposition that language in a prison regulation creates a liberty interest has been rejected by the United States Supreme Court. *Sandin v Conner*, 515 US 472; 115 S Ct 2293; 132 L Ed 2d 418

(1995). The appropriate inquiry is whether the challenged state action involved the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. Here, because the plaintiffs' restrictive placement took place in unique circumstances, it cannot be said that such placement was the type of atypical, significant deprivation of a state-created liberty interest.

2. There is no merit in the plaintiffs' claim that their due process rights were violated when they were deprived of basic necessities. The evidence regarding the alleged denial of basic necessities was conflicting. However, the allegations were the subject of grievances, and the defendant testified that he did not receive or handle those grievances.

Reversed and remanded for entry of an order granting the defendant's motion for judgment notwithstanding the verdict.

CONSTITUTIONAL LAW — DUE PROCESS — PRISON REGULATIONS.

The appropriate inquiry in determining whether state action that violates a state prison regulation also denies a prisoner a liberty interest protected by the Due Process Clause is whether the state action involved the type of atypical, significant deprivation in which a state might conceivably create a liberty interest (US Const, Am XIV).

*Amos E. Williams, P.C.* (by *Thomas E. Kuhn* and *Amos E. Williams*), for the plaintiffs.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Allan J. Soros*, Assistant Attorney General, for the defendant.

Before: HOOD, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM. Defendant Jim Pogats, deputy warden of the State Prison of Southern Michigan, appeals by leave granted from a judgment for plaintiffs Willie Thomas, Larry Reid, Edward Grant, and Emma Perrymon, as personal representative of the estate of Phillip J. Miller. We reverse and remand for entry of judgment in favor of defendant.

After a statutory change in the manner in which good-time and disciplinary credits were calculated, Thomas, Reid, Grant, and Miller (hereafter the plaintiffs) were discharged from prison on the basis of the Department of Corrections (DOC) interpretation of the statutes.[1] The Court of Appeals determined that the DOC interpretation of the statutes was incorrect. *Lowe v Dep't of Corrections (After Remand)*, unpublished decision of the Court of Appeals, issued November 15, 1993 (Docket No. 138095) (*Lowe I*). *Thomas v McGinnis*, 239 Mich App 636, 640; 609 NW2d 222 (2000). Kenneth L. McGinnis, director of the DOC, determined that he was required to enforce the *Lowe I* decision, although an order granting a motion for rehearing issued on February 3, 1994. The Attorney General's office, acting on behalf of the DOC, filed ex parte motions in the sentencing courts to rescind the prison discharges and for arrest warrants for plaintiffs to show cause why they should not be returned to prison to serve the remainder of their sentences. The sentencing court for Reid and Miller authorized the arrest warrants, but declined to hold a show cause hearing. The sentencing court for Grant scheduled a hearing for February 18, 1994. Plaintiffs were taken into custody, on or about February 10, 1994,[2] and sent to the State Prison of Southern Michigan in Jackson. *Id.* at 640-641.

Defendant James Pogats, deputy warden of the reception and guidance center of the prison, received word through a memorandum from the Lansing office

---

[1] An in-depth discussion of the underlying procedural statutory changes can be found in *Reid v Michigan*, 239 Mich App 621; 609 NW2d 215 (2000), and *Thomas v McGinnis*, 239 Mich App 636 (2000).

[2] Plaintiffs could not identify the exact date.

that plaintiffs were arriving. Normal admission hours for prisoners were generally from 8:00 A.M. to 3:00 P.M. However, prisoners, such as parole violators or escapees, could arrive after normal admission hours. The housing of a prisoner was contingent on his status and other factors. Normally, a prisoner would arrive with documentation, such as a presentence investigation report or a sheriff's report, which provided information about the prisoner's background, convictions, and any assaultive behavior during custody. Plaintiffs arrived at approximately 7:00 P.M. without any documentation. Because defendant had no information about plaintiffs, he did not know if any of them had enemies within the general prison population. He also did not know how long plaintiffs would be in custody in light of the uncertainty surrounding the application of the *Lowe I* decision. Any decision regarding placement was also contingent on the space available in the prison. Defendant decided to place plaintiffs in "top lock six" and waited for further direction from the Lansing office of the DOC. In "top lock," plaintiffs were maintained in their cells where they were served their meals.

Plaintiffs were placed in top lock six on February 10, 1994. On February 17, 1994, the Court of Appeals issued an order staying the effect of *Lowe I*.[3] Once the DOC was notified of the order staying the effect, it released prisoners who were arrested and taken into custody on the basis of the *Lowe I* decision. Plaintiffs were discharged on February 18, 1994. Plaintiffs

---

[3] On July 5, 1994, the Court of Appeals issued its opinion on rehearing, *Lowe v Dep't of Corrections* (*Lowe II*), 206 Mich App 128; 521 NW2d 336 (1994). The *Lowe II* Court concluded that *Lowe I* was wrongly decided, and affirmed the DOC's interpretation of the calculation of credits.

alleged that, during their stay in the reception and guidance center, they were deprived of due process in violation of 42 USC 1983. Specifically, plaintiffs alleged that they were never told of the basis for their imprisonment despite repeated inquiries. Plaintiffs also alleged that they were deprived of access to showers, the yard, telephones, and writing materials. Plaintiffs described the conditions in top lock six as "filthy," and no hearing was held before placement in top lock. Plaintiffs testified that top lock imprisonment was worse than segregation.

Defendant testified that the initial placement was in top lock because of the lack of information about plaintiffs. However, he also testified that, after arrival, one of three individuals would evaluate the prisoners. Defendant had no recollection of whether he reevaluated plaintiffs' initial placement in the prison. However, he testified that access to services indicated that an evaluation occurred. At trial, plaintiffs testified that they were denied all access to services until the date of discharge. However, contradictory testimony was presented in the prior trial and in depositions. For example, plaintiff Grant testified that he was allowed access to the yard on the day of release. In deposition, he testified that he obtained access to the yard within two to three days of imprisonment. Additionally, defendant testified that a "bedroll" of basic necessities, including, but not limited to, a toothbrush, paper, stamps, and a pencil, was issued to each prisoner. However, plaintiff Grant testified that he received a bedroll that included a pillow case, a sheet, and a blanket. When asked how he was able to file multiple grievances if he was not issued paper

and a pencil, plaintiff Grant testified that he received a pencil from the hall porter.

As previously noted, several actions were filed as a result of the imprisonment of plaintiffs. In *Reid v Michigan*, 239 Mich App 621, 626-627; 609 NW2d 215 (2000), plaintiffs alleged a due process violation, based on state law, against the DOC on the basis of plaintiffs' imprisonment without a hearing following their arrest. This Court reversed the judgment for plaintiffs because any due process violation was not the result of DOC action, but of the sentencing courts' failure to hold a hearing. *Id.* at 633-635. In *Thomas, supra,* plaintiffs alleged denial of due process based on federal law, 42 USC 1983. This Court determined that the action was barred by qualified immunity. *Thomas, supra* at 644-646.

In the present action, plaintiffs' allegations of wrongdoing were limited to defendant's ordered placement of the plaintiffs in "top lock" without a hearing and denial of basic necessities as a violation of due process rights.[4] Following a jury trial, each plaintiff was awarded $1,000 a day for five days in top lock and $30,000 in punitive damages. The trial court also granted plaintiffs' motion for mediation sanctions. We granted defendant's delayed application for leave to appeal.

---

[4] Defendant alleges, and plaintiffs do not dispute, that this litigation was filed after the motion for a directed verdict was granted in *Thomas*. In accordance with a motion for summary disposition filed by defendant, the trial court ruled that plaintiffs' filing of this complaint was partially outside the statute of limitations period. Accordingly, the trial court limited submission of the incarceration period to five days. The trial court also denied a motion for summary disposition based on res judicata and collateral estoppel. Those rulings have not been appealed.

Defendant first argues that plaintiffs could not claim a liberty interest protected by the Due Process Clause. US Const, Am XIV. We agree. Constitutional issues are reviewed de novo as a matter of law. *Kampf v Kampf*, 237 Mich App 377, 381; 603 NW2d 295 (1999). Due process enforces the rights enumerated in the Bill of Rights and includes both substantive and procedural due process. *Id.* at 381-382. Procedural due process serves as a limitation on government action and requires government to institute safeguards in proceedings that affect those rights protected by due process, including life, liberty, or property. *Id.* at 382. Due process is a flexible concept that applies to any adjudication of important rights. *Dobrzenski v Dobrzenski*, 208 Mich App 514, 515; 528 NW2d 827 (1995). It calls for procedural protections as the situation demands, including fundamental fairness. *Id.* Fundamental fairness includes (1) consideration of the private interest at stake, (2) the risk of an erroneous deprivation of such interest through the procedures used, (3) the probable value of additional or substitute procedures, and (4) the state or government interest, including the function involved and the fiscal or administrative burdens imposed by substitute procedures. *Id.*

Plaintiffs allege that their five-day placement in top lock without a hearing and without basic necessities was a due process violation. We disagree. In *Sandin v Conner*, 515 US 472; 115 S Ct 2293; 132 L Ed 2d 418 (1995), the prisoner, DeMont Conner, was subjected to a strip search. In response to the search, Conner retorted with angry and foul language. He received notice of a disciplinary infraction. Although Conner was afforded a hearing, he was not permitted to pres-

ent witnesses because the prison was understaffed. The disciplinary committee found Conner guilty of alleged misconduct and sentenced him to disciplinary segregation. Conner filed suit on the basis of 42 USC 1983, alleging a deprivation of procedural due process in connection with the disciplinary hearing. The United States Supreme Court granted leave to determine the circumstances under which state prison regulations afforded inmates a protected liberty interest. *Sandin, supra* at 474-477.

The Supreme Court rejected the proposition that the language of a prison regulation created a liberty interest. The Court noted that such a rule would provide a disincentive for states to codify prison management procedures. Additionally, such a rule would result in the squandering of judicial resources because courts would become involved in the day-to-day management of prisons. Rather, the appropriate inquiry examines whether the state action involved the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. *Id.* at 480, 482, 486. In *Martin v Stine*, 214 Mich App 403, 417-420; 542 NW2d 884 (1995), this Court applied *Sandin* to conclude that a five-day loss of privileges was not a type of atypical, significant deprivation in which this state created a liberty interest.[5]

---

[5] Plaintiffs argue that *Sandin* applies only to prisoners who were serving a legitimate sentence for their crimes. Review of the record reveals that the only issue submitted to the jury was the circumstances surrounding the confinement in top lock six. The trial court expressly stated that the jury would be told only that any reimprisonment was due to an administrative order because of the prior cases that adjudicated the issue of the reimprisonment. Accordingly, plaintiffs' attempt to distinguish *Sandin* on this basis in this case is without merit. In any event, the issue of the due process of the reimprisonment without a hearing was addressed and rejected in *Reid, supra.*

We conclude that plaintiffs' five-day confinement in top lock six did not constitute a deprivation of a protected liberty interest that violated due process. While plaintiffs' counsel was able to question defendant regarding the various types of hearings available in different circumstances, plaintiffs' confinement involved unique circumstances. The DOC had discharged plaintiffs from imprisonment on the basis of its calculation of credits available. The *Lowe I* Court concluded that the DOC's calculation was incorrect. The DOC, in reliance on the decision, obtained arrest warrants for plaintiffs. However, the DOC, represented by the state attorney general, also acted to plaintiffs' benefit by challenging the holding of *Lowe I* with the filing of a motion for rehearing that alleged that the appellate court interpretation violated the constitutional prohibition against ex post facto laws. The order granting rehearing was silent on the precedential effect of the decision pending a decision on rehearing. However, the *Lowe I* Court issued another order on February 17, 1994, staying the effect of the decision.

Defendant testified that he made the decision to place plaintiffs in top lock six on the basis of valid factors. Plaintiffs' criminal histories were unavailable at the time of confinement. The duration of plaintiffs' confinement was unknown in light of the fact that the DOC had taken measures to secure their release by challenging *Lowe I*. It was unknown whether plaintiffs presented a threat to prison personnel, and it was unknown whether plaintiffs were at risk in the general prison population. In any event, plaintiffs had no liberty interest in their location placement inside the prison. See *Williams v Faulkner*, 837 F2d 304, 309

(CA 7, 1988). While plaintiffs also alleged deprivations of basic necessities, there was conflicting evidence regarding the provisions given to plaintiffs at admission. However, these allegations were the subject of grievances, and defendant testified that he did not receive or handle those grievances. In summary, plaintiffs failed to identify atypical, significant deprivation of a state-created liberty interest. *Sandin, supra.* The trial court erred in denying defendant's motion for judgment notwithstanding the verdict (JNOV).[6]

Reversed and remanded for entry of an order granting defendant's motion for JNOV. We do not retain jurisdiction.

---

[6] Because we have concluded that the trial court erred in denying defendant's motion for JNOV, the issue of mediation sanctions is moot. The order granting mediation sanctions is vacated. Because of our resolution of the first issue, we need not address defendant's second issue on appeal. Furthermore, we note that the qualified immunity decision rendered in *Thomas* is equally applicable to our defendant.