PEOPLE v BENEVIDES

Docket No. 130693. Submitted December 8, 1993, at Detroit. Decided
March 21, 1994, at 9:10 A.M.

Alberto Benevides was convicted following a bench trial in the
Oakland Circuit Court, Francis X. O'Brien, J., of escape from
prison and being a second-offense habitual offender. He was
sentenced to five days in jail. He appealed, alleging that the
trial court erred in concluding that the crime of prison escape
requires no criminal intent.

The Court of Appeals *held:*

The trial court erred in concluding that prison escape is not
a specific intent crime. A conviction of prison escape, under
MCL 750.193(1); MSA 28.390(1), requires proof that the defen-
dant intended to escape from known confinement. Because the
trial court specifically found that the defendant did not intend
to escape, his conviction of escape from prison must be reversed
and his habitual offender conviction vacated.

Conviction of prison escape reversed, conviction of being an
habitual offender vacated.

PRISONS AND PRISONERS — PRISON ESCAPE — SPECIFIC INTENT.

A conviction of prison escape requires proof that the defendant
intended to escape from known confinement; a prisoner escapes
if there is voluntary self-removal from the imposed restraint
over person and volition with knowledge of, and the intent to
engage in such removal from, the restraints imposed (MCL
750.193[1]; MSA 28.390[1]).

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, *Richard Thompson,* Pros-
ecuting Attorney, and *John S. Pallas,* Assistant
Prosecuting Attorney, for the people.

State Appellate Defender (by *James Krogsrud*),
for the defendant on appeal.

REFERENCES
Am Jur 2d, Escape, Prison Breaking and Rescue §§ 1, 17.
See ALR Index under Escape or Flight; Prisons and Prisoners.

Before: GRIFFIN, P.J., and MacKENZIE and J. E. MIES,* JJ.

MacKENZIE, J. Following a bench trial, defendant was convicted of escape from prison, MCL 750.193; MSA 28.390, and being an habitual offender, second offense, MCL 769.10; MSA 28.1082. Defendant was sentenced to five days in jail. He appeals as of right, and we reverse.

In April 1988, defendant pleaded guilty of operating a vehicle while under the influence of liquor, third offense, and was sentenced to two to five years' imprisonment. In August 1989, he was transferred to the Pontiac Correctional Center, a residential work-release facility.

On September 19, 1989, defendant was placed on a tether program in which he was allowed to live at his mother's Pontiac residence and report to work.

On November 6, 1989, a field agent at the Pontiac Correctional Center contacted defendant at his job because defendant had received a substance abuse ticket. Defendant reported to the center and was given the option of entering a six-month, in-house substance abuse program or returning to the prison in Jackson. He chose to return to Jackson. According to the field agent, defendant was then put on house restriction and told not to leave the Pontiac Correctional Center. The agent did not remove defendant's tether, but, instead, told defendant that it would be removed at a later time.

According to defendant, he went to get a room assignment and asked the officer if he could go get his personal things before returning to Jackson. The officer told him to ask the field agent. When defendant discovered that the field agent was at

---

* Circuit judge, sitting on the Court of Appeals by assignment.

lunch, he decided "to go get my stuff[,] to come back and . . . get situated [at the center] to be going back to Jackson." Defendant explained that because he still had the tether on his leg, he thought he was still on the tether program and could be trusted to go to his mother's house. Defendant then went to his mother's house, gathered his clothing and toiletries, and returned to the center fifteen minutes later. It is this fifteen-minute absence that formed the basis for defendant's prison escape conviction.

MCL 750.193(1); MSA 28.390(1) states in relevant part:

> A person imprisoned in a prison of this state who breaks prison and escapes, breaks prison though an escape is not actually made, escapes, leaves the prison without being discharged by due process of law, attempts to break prison, or attempts to escape from prison, is guilty of a felony, punishable by further imprisonment for not more than 5 years.

The Pontiac Correctional Center is a prison for the purposes of this statute. MCL 750.193(2); MSA 28.390(2).

In finding defendant guilty of escape, the trial court stated:

> Well, I have heard the case, and this . . . law is an anomaly to me. If you correctly state the law [, then] the minute you walk away without consent without being discharged[,] under . . . the law, you become guilty of the offense. . . .
>
> I think it is wrong as can be because he didn't intend to escape. I believe what he said. He wouldn't have been back in 15 or 30 minutes if he intended to escape. But he violated the law the minute he walked out of the door because . . . you

just walk out the door and whatever your intent is
. . . you have violated this very heavy law. So he
is guilty. Technically he is guilty, and I have to
find him guilty. But I think it is terrible. That is
how I feel.

On appeal, defendant contends that the trial
court erred in concluding that MCL 750.193; MSA
28.390 is essentially a strict liability crime requiring no criminal intent. We agree.

The Legislature's failure to mention the mens
rea required for a conviction under a criminal
statute does not mean that the statute defines a
strict liability crime for which punishment can be
imposed without proof of any mens rea at all. See
*United States v Bailey,* 444 US 394, 406, n 6; 100 S
Ct 624; 62 L Ed 2d 575 (1980). " '[M]ere omission
[from the statute] of any mention of intent will not
be construed as eliminating that element from the
crimes denounced.' " *Id.,* quoting *Morissette v
United States,* 342 US 246, 263; 72 S Ct 240; 96 L
Ed 288 (1952).

This Court has held that prison escape is not a
specific intent crime. *People v Noble,* 18 Mich App
300, 303; 170 NW2d 916 (1969). However, our
Supreme Court has on at least two occasions suggested that the offense includes an element of
"mens rea" or "requisite state of mind." In *People
v Luther,* 394 Mich 619, 622; 232 NW2d 184 (1975),
the Court concluded that a defendant may raise
duress as a defense to prison escape. The Court
noted:

A successful duress defense excuses the defendant from criminal responsibility for an otherwise
criminal act because the defendant was compelled
to commit the act; the compulsion or duress overcomes the defendant's free will and *his actions
lack the required mens rea.* [Emphasis added.]

If duress is a defense to the offense of prison escape, as *Luther* holds, then the offense must have criminal intent as an element.

In *People v Quintero*, 67 Mich App 481, 482; 241 NW2d 251 (1976), this Court affirmed the defendant's prison escape conviction because "[t]he record here establishes beyond question that defendant was where he had no right to be without permission." The Supreme Court, by order, peremptorily vacated the decision. *People v Quintero*, 399 Mich 888; 291 NW2d 925 (1977). The Supreme Court remanded the case to the trial court for specific findings on several factors, including whether "the defendant intend[ed] to leave the prison boundaries and did he do so with the requisite state of mind?" This analysis strongly suggests that more than merely leaving without permission is required to sustain a conviction of prison escape.

In *People v Marsh*, 156 Mich App 831, 834; 402 NW2d 100 (1986), this Court defined the offense of prison escape as follows:

> A prisoner escapes if he removes himself from the imposed restraint over his person and volition with knowledge of, and the intent to remove himself from, the restraints imposed.

We think that this definition best expresses the element of "mens rea" or "requisite state of mind" identified by the Supreme Court in *Luther* and *Quintero, supra,* for the crime of prison escape. We therefore hold that a conviction of prison escape requires proof that the defendant intended to escape from known confinement.

In this case, the trial court specifically found that defendant did not intend to escape from the

Pontiac Correctional Center. Because the intent to escape is an element of the crime of prison escape, we reverse defendant's conviction of that offense and vacate his habitual offender conviction.

Reversed.