PEOPLE v SHEETS

Docket No. 192336. Submitted March 5, 1997, at Detroit. Decided May 27, 1997, at 9:10 A.M.

Theodore A. Sheets was convicted of prison escape at a bench trial in the Monroe Circuit Court, Michael W. LaBeau, J., after he left his wife's apartment in violation of the terms of an electronic tether program that confined him to the apartment except when he worked or when allowed to leave for other authorized purposes. The defendant appealed.

The Court of Appeals *held*:

1. The trial court, in denying the defendant's motion for a directed verdict, which motion was based on the prosecution's failure to show intent to escape, erred to the extent that it ruled that proof of such intent is not required for conviction of prison escape.

2. The prison escape statute, MCL 750.193(3); MSA 28.390(3), provides that a person released from prison under a work-pass program who violates the terms of the release or fails to return to the place of imprisonment within the time provided is guilty of prison escape. A prisoner commits escape from restraints imposed on the prisoner's person and volition with knowledge of, and the intent to depart from, the restraints imposed. Here, the prosecution presented sufficient evidence from which a rational trier of fact could conclude that the defendant wilfully violated the terms of his confinement and therefore intended to escape.

3. The defendant's wife's apartment satisfies the definition of "community residential home" as a "facility where electronic monitoring of prisoner presence is provided by the [Department of Corrections] 7 days per week, 24 hours per day," MCL 791.265a(6)(b); MSA 28.2325(1)(6)(b), at which the director of the department may authorize a prisoner to be housed while engaged in paid employment, MCL 791.265a(1)(c); MSA 28.2325(1)(1)(c), and for which a prisoner's wilful failure to remain therein within the limits of confinement is considered escape, MCL 791.265a(3); MSA 28.2325(1)(3).

4. The trial court did not err in finding that the defendant had been in a work-pass program by virtue of the requirement under the tether program that he be gainfully employed.

Affirmed.

1. PRISONS AND PRISONERS — ESCAPE — INTENT.

Proof of intent to escape is required for conviction of prison escape (MCL 750.193; MSA 28.390).

2. PRISONS AND PRISONERS — ESCAPE — ELECTRONIC TETHERS.

A prisoner commits escape by departing from restraints imposed upon the prisoner's person and volition with knowledge of, and the intent to depart from, the restraints imposed as by leaving a residence to which the prisoner has been confined under the terms of an electronic tether program for a purpose not authorized under the terms of the program (MCL 750.193; MSA 28.390).

3. PRISONS AND PRISONERS — ESCAPE — COMMUNITY RESIDENTIAL HOMES

A residence to which a prisoner is confined except for work or other authorized purpose under the terms of an electronic tether program may be considered a community residential home for which a prisoner's wilful failure to remain therein as specified constitutes prison escape (MCL 750.193, 791.265a[1][c], [3], [6][b]; MSA 28.390, 28.2325[1][1][c], [3], [6][b]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Edward F. Swinkey*, Prosecuting Attorney, and *Bonita S. Hoffman*, Assistant Prosecuting Attorney, for the people.

*Musilli, Baumgardner, Wagner & Parnell, P.C.* (by *Dennis M. Fuller*), for the defendant.

Before: CAVANAGH, P.J., and REILLY and WHITE, JJ.

CAVANAGH, P.J. Defendant appeals as of right his bench trial conviction of prison escape, MCL 750.193; MSA 28.390. The trial court sentenced defendant as an habitual offender, second offense, MCL 769.10, MSA 28.1082, to one to 7½ years' imprisonment. We affirm.

Defendant was convicted of larceny in a building, MCL 750.360; MSA 28.592, and sentenced to a term of one to four years' imprisonment. Defendant began serving his sentence in the state penitentiary at Jack-

son, but was transferred to the Monroe Corrections Center in July 1994. On April 13, 1995, defendant was placed in an electronic tether home-monitoring program.

The tether program involves connecting an electronic monitoring device to the telephone in the inmate's home and putting a transmitter on the inmate's ankle. The ankle transmitter sends a signal to the electronic monitoring device. The electronic monitoring device then transmits the information to the central computer at the Department of Corrections. When the signal is received by the Department of Corrections, it is registered as either a "leave" or an "enter," and the time of the event is recorded. The inmate's "leaves" and "enters" are compared with a schedule, previously submitted by the inmate, to see if they correspond.

In the instant case, defendant was permitted to live at his wife's apartment. Defendant was required to remain in the apartment unless he had authorization to leave. Defendant was allowed to leave in order to go to work. Defendant was also permitted to leave for two hours each week to go shopping. Defendant was advised of the rules of the program, and he signed a form acknowledging that he could be charged with prison escape for "leaving the Corrections Center/Electronic Monitoring placement without permission, failing to return at the approved time or going to other than the approved destination when authorized to leave the Corrections Center/Electronic Monitoring placement."

Defendant was employed at the Meijer distribution center in Newport. On May 8, 12, 14, 21, and 22, 1995, defendant was scheduled to work at Meijer's but

called to say that he would not be coming in. On May 15, 1995, defendant was not scheduled to work, but he told the Department of Corrections that he was. On all the above dates, the tether records indicated that defendant had left the apartment. Lindsey Blackwell, a senior agent assigned to the Monroe Corrections Center, testified that when he asked defendant where he had been on those dates, defendant admitted that, on various occasions when he was supposed to be at work, he had gone with his family to the park, gone to shows, and looked at houses. Defendant was unable to match any specific day with a particular activity, because there had been a number of occasions when he had been out without authorization.

These unauthorized leaves violated the terms of defendant's release agreement, which prohibited defendant from leaving the apartment without permission and going to a place other than the approved destination when authorized to leave. On the basis of these violations, defendant was charged with prison escape.

Before trial, defendant moved to quash the information. Defendant argued that the district court abused its discretion in binding him over for trial because the prosecutor could not prove that he intended to escape. The defendant also argued that, because his release was not under a work-pass program as defined by the statute, he could not be charged with violating the conditions of a work release. The trial court denied defendant's motion.

During trial, defendant moved for a directed verdict on the basis that the prosecutor had not proved that defendant intended to escape. The trial court found

that the prosecutor had not proved that defendant intended to escape, but ruled that intent to escape was not an element of the offense and denied the motion. The trial court subsequently convicted defendant of prison escape.

On appeal, defendant argues that the trial court erred in finding that intent to escape was not an element of the offense. Defendant also contends that the trial court erred in finding that defendant's wife's apartment was a community home and that defendant was a participant in a work-pass program pursuant to MCL 791.265a; MSA 28.2325(1). On appeal, we review de novo questions of law regarding statutory interpretation. *People v Bobek*, 217 Mich App 524, 528; 553 NW2d 18 (1996).

MCL 750.193; MSA 28.390 provides, in pertinent part:

> (1) A person imprisoned in a prison of this state who breaks prison and escapes, breaks prison though an escape is not actually made, escapes, leaves the prison without being discharged by due process of law, attempts to break prison, or attempts to escape from prison, is guilty of a felony, punishable by further imprisonment for not more than 5 years. . . .

> \*       \*       \*

> (3) . . . A person released from prison under a work pass program who violates the terms of the release or fails to return to the place of imprisonment within the time provided is guilty of a violation of this section.

The Legislature has also set forth the following:

> (1) Under prescribed conditions, the director may extend the limits of confinement of a prisoner when there is reasonable assurance after consideration of all facts and cir-

cumstances, that the prisoner will not become a menace to society or to the public safety, by authorizing the prisoner to do any of the following:

\*        \*        \*

(c) Work at paid employment . . . while continuing as a prisoner housed on a voluntary basis at a community corrections center or in a community residential home.

\*        \*        \*

(3) The willful failure of a prisoner to remain within the extended limits of his or her confinement or to return within the time prescribed to an institution or facility designated by the director shall be considered an escape from custody as provided in . . . section 750.193 of the Michigan Compiled Laws. [MCL 791.265a; MSA 28.2325(1).]

Our goal in interpreting statutes is to ascertain the intent of the Legislature. *People v Burton*, 219 Mich App 278, 286; 556 NW2d 201 (1996). The first criterion in determining the Legislature's intent is the specific language of the statute. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither permitted nor necessary. *People v Cohen*, 217 Mich App 75, 79; 551 NW2d 191 (1996). Statutes relating to the same subject or sharing a common purpose should be read together as one. *People v Rogers*, 438 Mich 602, 608; 475 NW2d 717 (1991) (MALLETT, J.).

Defendant first contends that the trial court erred in holding that intent to escape was not an element of the offense. When denying defendant's motion for a directed verdict, the trial court stated:

[W]hat the defendant is charged with is violating the terms of his release from prison under a work pass program. That's the statutory language that allows that to be—

that activity to be prosecuted under the escape statute. That is[,] that he was released from prison under a work pass program, and he violated the terms of that release.

Now, the rest of [it] doesn't matter. It's not required that the prosecution show intent to escape, which you have not done, I might add. But, it's not required that you show that. It's required simply that you show that he was on a work pass program. He violated the terms of that release.

To the extent that the trial court implied that prison escape is essentially a strict liability crime requiring no criminal intent, we agree that the trial court erred. In *People v Benevides*, 204 Mich App 188, 191; 514 NW2d 208 (1994), this Court specifically rejected that proposition. In *Benevides*, the defendant was placed on a tether program in which he was allowed to live at his mother's residence and report to work. After violating the conditions of his release, the defendant was to be returned to prison. The defendant was told not to leave the Pontiac Correctional Center, but his tether was not removed. Believing that he was still on the tether program because the tether was still on his leg, the defendant left the center for fifteen minutes to retrieve his clothing and toiletries from his mother's house. *Id.* at 189-190. The fifteen-minute absence from the center formed the basis for the defendant's conviction of prison escape. The trial court found that the defendant had not intended to escape, but that MCL 750.193; MSA 28.390 was a strict liability crime requiring no criminal intent. *Benevides*, *supra* at 190-191. This Court reversed, holding that "a conviction of prison escape requires proof that the defendant intended to escape from known confinement." *Id.* at 192.

Defendant seizes upon the above language and argues that because the prosecution did not prove

that he intended to escape, his conviction must be reversed.[1] However, we believe that defendant defines "escape" too literally. Defendant limits "escape" to the situation where a prisoner slips away from confinement and avoids capture. However, the Legislature has specifically provided that a "person released from prison under a work pass program who violates the terms of the release or fails to return to the place of imprisonment within the time provided" is guilty of prison escape. See MCL 750.193(3); MSA 28.390(3).

With regard to the intent requirement for the crime of prison escape, the *Benevides* Court said the following:

> "A prisoner escapes if he removes himself from the imposed restraint over his person and volition with knowledge of, and the intent to remove himself from, the restraints imposed." [204 Mich App 192, quoting *People v Marsh*, 156 Mich App 831, 834; 402 NW2d 100 (1986).]

In the present case, the restraint on defendant was the requirement of the Electronic Monitoring System Home Confinement Agreement that he remain in the apartment unless he had authorization to leave. Thus, the prosecutor was required to prove that defendant wilfully failed to abide by the terms of his confine-

---

[1] Defendant also relies on *People v Sarres*, 188 Mich App 475; 470 NW2d 86 (1991). In *Sarres*, the defendant, who had been placed on an extended furlough in his parents' home, was convicted of prison escape for failing to report to his parole officer. *Id.* at 476. This Court reversed the defendant's conviction, finding that a mere failure to report to a parole officer is not a violation of the prison escape statute where "the prisoner has been either returning to or residing at the place where he was required to reside." However, we find this case to be distinguishable from *Sarres* because defendant was not charged here for merely failing to report to the Department of Corrections. Moreover, the *Sarres* majority stated in dicta, "[H]ad [the defendant] left the home without authorization, we would not hesitate to affirm the conviction." *Id.* at 477.

ment. Cf. *People v Granquist*, 183 Mich App 343, 346; 454 NW2d 207 (1990); *People v Bookmeyer*, 127 Mich App 69, 72; 338 NW2d 557 (1983). We conclude that a rational factfinder could find that the prosecution presented sufficient evidence at trial to establish that defendant wilfully violated the terms of the Electronic Monitoring System Home Confinement Agreement and thus satisfied the intent element of the statute.

 Defendant also argues that he was not a prisoner housed at a "community residential home" as that term is employed in MCL 791.265a(1)(c); MSA 28.2325(1)(1)(c), and that he therefore could not have been a participant in a work-pass program as contemplated by that provision. Defendant contends that the trial court's finding to the contrary was clearly erroneous because officers from the Department of Corrections testified that there are no community residential homes in Monroe County and that the department did not administer any work-pass programs. However, the trial court was not bound by the officers' definition of the term "community residential home." It is the exclusive job of the trial court to interpret the applicable law.[2] *People v Lyons*, 93 Mich App 35, 46; 285 NW2d 788 (1979).

MCL 791.265a(6)(b); MSA 28.2325(1)(6)(b) defines a "community residential home" as "a facility where electronic monitoring of prisoner presence is provided by the department 7 days per week, 24 hours

---

[2] As Chief Justice Marshall of the United States Supreme Court stated in the landmark case of *Marbury v Madison*, 5 US (1 Cranch) 137, 177; 2 L Ed 60 (1803):

> It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule.

per day." We conclude that the apartment where defendant was staying clearly falls under this definition.[3]

Furthermore, a "community corrections center" is defined as "a facility either contracted for or operated by the department," MCL 791.265a(6)(a); MSA 28.2325(1)(6)(a), and a "state correctional facility" is defined as "a facility owned or leased by the department," MCL 791.265a(6)(c); MSA 28.2325(1)(6)(c). We believe that the fact that the definition of a "community residential home" omits any reference to direct control by the Department of Corrections indicates that the Legislature intended the term "community residential home" to include private residences that have been equipped with electronic monitoring equipment.

If, as defendant contends, the Legislature intended "community residential home" to refer to a building that houses inmates of the Department of Corrections, it would have been unnecessary for the Legislature to distinguish among a "community residential home," a "community corrections center," and a "state correctional facility." Moreover, under defendant's definition, prisoners who are allowed to participate in a tether program, and who abuse that privilege, cannot be convicted of prison escape. This was clearly not the intent of the Legislature. See MCL 791.265a(3); MSA 28.2325(1)(3). Statutes must be construed so as to prevent absurd or illogical results not

---

[3] Defendant also argues that his wife's apartment was not a "facility." However, we agree with the trial court that the department's installation of electronic monitoring equipment in the apartment was sufficient to convert it into a "facility" within the meaning of MCL 791.265a(6)(b); MSA 28.2325(1)(6)(b).

intended by the Legislature. *People v Jones*, 217 Mich App 106, 107; 550 NW2d 844 (1996).

Defendant further contends that the trial court erred in finding that he was participating in a "work pass program." The statute does not define the phrase "work pass program." However, as a condition of participating in the tether program, defendant was required to be gainfully employed. See MCL 791.265a(1)(c); MSA 28.2325(1)(1)(c). We conclude that the trial court did not err in finding that defendant was participating in a work-pass program.

In conclusion, we find that the trial court did not err in denying defendant's motion for a directed verdict. In addition, the district court did not abuse its discretion in binding defendant over for trial.

Affirmed.