# STATE OF MICHIGAN

# COURT OF APPEALS

LASAN BELLAMY,

       Petitioner-Appellant,

v

DEPARTMENT OF CORRECTIONS and
PAROLE BOARD,

       Respondents-Appellees.

UNPUBLISHED
March 20, 2018

No. 336584
Ingham Circuit Court
LC No. 16-000017-AW

Before: SAWYER, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Petitioner, Lasan Bellamy, appeals by right the trial court's opinion and order denying his petition for mandamus, motion for summary disposition, motion for temporary restraining order, and request for a preliminary injunction, all of which were directed at respondents Michigan Department of Corrections (MDOC) and the Michigan Parole Board (the Parole Board) (collectively "respondents"). We affirm the trial court's order.

## I. BASIC FACTS

In March 1996, petitioner was sentenced to 12 to 30 years in prison for first-degree criminal sexual conduct. His earliest release date was October 1, 2006. Petitioner was released on parole on October 3, 2013. A condition of his parole was that petitioner reside at the Kalamazoo Probation Enhancement Program ("KPEP") facility in Benton Harbor Michigan, a "residential sex offender placement facility." On January 22, 2014, petitioner absconded parole, leaving KPEP without permission and removing his electronic monitoring device. After three months, petitioner turned himself in. He was re-incarcerated and pleaded guilty to eight counts of parole violation. His parole status was subsequently revoked and continued to be revoked.

Petitioner filed a petition for mandamus seeking, among other things, reinstatement of his parole and an order that respondents be prohibited from conditioning future parole on a requirement that he reside in a facility such as KPEP. Respondents filed a brief arguing that the trial court lacked subject matter jurisdiction because petitioner's petition was not in accordance with the Michigan Prison Litigation Reform Act (PLRA), MCL 600.5501 *et seq.* The trial court agreed with respondents and dismissed petitioner's petition. Petitioner appealed the dismissal, and in lieu of granting leave to appeal, this Court reversed and remanded because petitioner was not required to comply with the requirements of the PLRA since his petition was not a civil

-1-

action concerning prison conditions. *Bellamy v Dep't of Corrections*, unpublished order of the Court of Appeals, entered July 1, 2016 (Docket No. 332250), citing *Hayes v Parole Bd*, 312 Mich App 774, 781-782; 886 NW2d 725 (2015).

Before the trial court could reinstate petitioner's case, he submitted a motion for summary disposition and various other filings. He also requested a temporary restraining order and a preliminary injunction. The court denied petitioner's petition for mandamus, his motion for summary disposition, and his motion for temporary restraining order and preliminary injunction.

## II. MANDAMUS

Petitioner first argues that the trial court erred in denying his petition for mandamus. We review the denial of a writ of mandamus for an abuse of discretion. *Rhode v Dep't of Corrections*, 227 Mich App 174, 178; 578 NW2d 320 (1997). Whether a defendant has a clear legal duty to perform and whether a plaintiff has a clear legal right to performance of a duty are questions of law that we review de novo. *Id.* We also review the proper interpretation and application of statutes de novo. *Hayes v Parole Bd*, 312 Mich App 774, 778; 886 NW2d 725 (2015).

Petitioner argues that KPEP falls under the definition of a "community residential home" and therefore, when the Parole Board required that he reside there as a condition of his parole, it exceeded its legal authority. He argues that this entitles him to a writ of mandamus to compel respondents to reinstate his parole and alter future parole conditions. We disagree.

"Mandamus is an extraordinary remedy, and its issuance is discretionary with the court." *Lee v Macomb Co Bd of Comm'rs*, 235 Mich App 323, 331; 597 NW2d 545 (1999), rev'd on other grounds 464 Mich 727 (2001). "The primary purpose of the writ of mandamus is to enforce duties created by law, where the law has established no specific remedy and where, in justice and good government, there should be one." *State Bd of Ed v Houghton Lake Community Sch*, 430 Mich 658, 667; 425 NW2d 80 (1988) (citation omitted). In order to obtain a writ of mandamus, the plaintiff bears the burden of showing that (1) the plaintiff has a clear legal right to the performance of a specific duty; (2) the defendant has the clear legal duty to perform the specific duty; (3) the act is ministerial; and (4) the plaintiff is without any other adequate legal or equitable remedies. *Barrow v Detroit*, 301 Mich App 404, 412; 836 NW2d 498 (2013).

The Parole Board has authority to grant parole to qualified inmates. *In re Parole of Bivings*, 242 Mich App 363, 372; 619 NW2d 163 (2000). Parole is a conditional release where the paroled prisoner remains in the custody of the Department of Corrections, but is permitted to leave the confinement of prison.[1] *People v Clark (On Remand)*, 315 Mich App 219, 229; 888

---

[1] We note that the trial court erroneously found that petitioner was not an "incarcerated individual" at the time of his parole. Parolees are still prisoners under the custody of the Department of Corrections until they are released into the community at large. MCL 791.238(1); *People v Armisted*, 295 Mich App 32, 39; 811 NW2d 47 (2011).

NW2d 309 (2016). "The purpose of a parole is to keep the prisoner in legal custody while permitting him to live beyond the prison [enclosure] so that he may have the opportunity to show that he can refrain from committing crime." *People v Holder,* 483 Mich 168, 174; 767 NW2d 423 (2009). Pursuant to MCL 791.236(4), the Parole Board has the authority to impose conditions of parole and must "specifically provide proper means of supervision of the paroled prisoner." The Parole Board may condition a parolee's release on his or her supervised residence at a "community corrections center" or in a "community residential home." MCL 791.236(11). But, "[a] prisoner who is convicted of a crime of violence or any assaultive crime, and whose minimum sentence imposed for the crime is 10 years or more, shall not be placed in a community residential home during any portion of his or her sentence." MCL 791.265a(8).

When interpreting a statute this Court must "discern and give effect to the Legislature's intent." *Hayes,* 312 Mich App at 778. When statutory language is unambiguous, it is presumed that the Legislature's intent is clearly expressed and no further judicial construction is required or permitted. *Id.* "Further, courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *Id.* at 779 (internal quotation marks omitted). This Court considers statutes in their entire context so that statutory schemes are consistent and harmonious. *Id.* "Statutes that address the same subject matter or share a common purpose are *in pari materia* and must be read collectively as one law, even when there is no reference to one another." *Id.*

Only limited definitions are provided for the terms "community corrections center" and "community residential home." The statute describes a community residential home as "a location where electronic monitoring of prisoner presence is provided by the department 7 days per week, 24 hours per day." MCL 791.265a(9)(b). This Court found in *People v Sheets*, 223 Mich App 651, 659-660; 567 NW2d 478 (1997), that a parolee's residence in his wife's apartment on 24-hour electronic monitoring "clearly" fell under the definition of a community residential home; the Court said "private residence[s]" are community residential homes under the statute. *Id.* at 660.

In contrast, the statute defines a community corrections center as "a facility either contracted for or operated by the department in which a security staff is on duty 7 days per week, 24 hours per day." MCL 791.256a(9)(a). In *Sheets*, the Court said that community corrections centers are "state correctional facilities" because they are owned or leased by the department of corrections. 223 Mich App at 660. Similarly, in *People v Armisted*, 295 Mich App 32, 39; 811 NW2d 47 (2011), although interpreting a different statute, this Court considered a "residential parolee reentry program" to be a community corrections center, and therefore, a "corrections facility," because it was "designed to involuntarily restrain or confine persons committed to its jurisdiction while those persons receive certain remedial services designed to help them transition to the community at large." 295 Mich App at 43-44.

We conclude that KPEP is a "community corrections center" and not a "community residential home" as petitioner attempts to categorize it. KPEP is not a private residence. As it was described in petitioner's order of parole, it is a "residential sex offender placement facility." In petitioner's own filings he described that he was "ordered to reside" there and that while there he was "without the privilege to leave or seek employment." It is a staffed facility that is under the control, at least indirectly, by the department of corrections. MCL 791.265a(9)(a). Further,

it offers services and programming for parolees to prepare them to transition into the community. *Armisted*, 295 Mich App at 43-44. Petitioner seizes on the language "electronic monitoring," found in the definition of community residential home but not in the definition of community corrections center, to argue that KPEP was a community residential home because he was placed on electronic tether. However, there is nothing that suggests that electronic monitoring in addition to on-site security changes the nature of a community corrections center. MCL 791.256a(9)(a). Accordingly, KPEP is properly characterized as a community corrections center.

Petitioner next argues that he does not meet the "community status" criteria pursuant to MCL 791.265h, and that his placement in community residential homes *and* community corrections centers was therefore forbidden. Accordingly, he argues that his placement at KPEP was in error.

Under MCL 791.265h(1),

(1) A prisoner who does not meet the community status criteria shall not be placed in a community corrections center or community residential home. The community status criteria include all of the following requirements:

* * *

(c) The prisoner is not serving a sentence for conviction of a criminal sexual conduct offense [including first-degree criminal sexual conduct, MCL 750.520b.]

(d) The prisoner is not classified as a very high assault risk according to the departments risk screening criteria.

However, a prisoner may also obtain community status under MCL 791.265h(1)(g)

[i]f the prisoner is serving a sentence for conviction of a crime of violence or an assaultive crime, as defined by rules of the department, the prisoner has less than 180 days remaining on his or her minimum sentence, and otherwise meets the community placement requirements of section 65a (citation omitted).

The "community placement requirements of section 65a" state that the director of the Parole Board "may extend the limits of confinement of a prisoner when there is reasonable assurance, after consideration of all facts and circumstances, that the prisoner will not become a menace to society or to the public safety." MCL 791.265a(1).

Although subject to legislative restraints, the Parole Board has broad discretion in determining whether to grant a prisoner parole. *Hopkins v Mich Parole Bd*, 237 Mich App 629, 643; 604 NW2d 686 (1999). Here, petitioner was granted parole in accordance with the Parole Board's discretion and within the confines of the legislative restraints imposed by MCL 791.265h and MCL 791.265a. First, the requirements of MCL 791.265h(1) were met. Although petitioner was serving a sentence for an assaultive crime, he had less than 180 days remaining on his minimum sentence. Next, pursuant to MCL 791.265h(1)(g), he met the requirements of MCL 265a(1), because the Parole Board's decision to parole him stated that "[r]easonable

assurances exist that the prisoner will not become a menace to society or to the public safety." Therefore, because petitioner fit the statutory criteria, and in the Parole Board's discretion he was deemed not to be a menace to society or pose a threat to public safety, his release into a community corrections center did not violate MCL 791.265h.

Finally, petitioner argues that MCL 769.2a(1)(a) supports the proposition that his placement at KPEP was erroneous. This statute mandates that a prisoner serving a sentence for first-degree criminal sexual conduct, among other listed crimes, "shall not be eligible for custodial incarceration outside a state correctional facility or county jail." MCL 796.2a(1). However, this statute explicitly excludes "community corrections center" from the prohibition. MCL 769.2a(2). Petitioner fails to identify any statute that would prohibit the Parole Board from mandating that he reside in a community corrections center.

The first requirement that must be satisfied in seeking a writ of mandamus is establishing that the petitioner "has a clear legal right to the performance of the duty sought." *Id.* at 411. There is no legal right to parole in Michigan. *Morales v Mich Parole Bd*, 260 Mich App 29, 39; 676 NW2d 221 (2003). However, if the Parole Board, in its discretion, does grant parole it may impose conditions on that parole. MCL 791.236(4). Here, the Parole Board was within its discretion to condition petitioner's parole on the requirement that he reside at KPEP. Accordingly, petitioner has not shown that he has a legal right to be granted parole or not to be ordered to reside at KPEP as a condition of that parole. Therefore, he cannot show that a writ of mandamus is an appropriate remedy and the trial court did not abuse its discretion in denying his petition.

### III. SUMMARY DISPOSITION

Petitioner next argues that the trial court erred in denying his motion for summary disposition. "This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

Petitioner argues that summary disposition should have been granted under MCR 2.116(C)(10) because respondents did not address his argument that KPEP was a community residential home. Summary disposition motions are appropriately granted under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors*, 469 Mich 177, 183; 665 NW2d 468 (2003). A court must consider the evidence in the light most favorable to the moving party. *Joseph v Auto Club Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

In respondents' reply brief to petitioner's motion for summary disposition, they did not specifically address whether KPEP constituted a community residential home or a community corrections center. Instead, respondents' argument focused on the fact that petitioner did not have a clear legal right to compel the Parole Board to change conditions of his parole or reinstate his parole. Evidence of a clear legal right and a clear legal duty are requirements for a plaintiff to receive a writ of mandamus. *Barrow*, 301 Mich App at 412. Accordingly, petitioner was not

entitled to judgment as a matter of law and summary disposition for petitioner would have been inappropriate under MCR 2.116(C)(10).

Second, petitioner argues that summary disposition was appropriate under MCR 2.116(C)(9) because respondents "failed to state a valid claim." Presumably, plaintiff means they failed to state a valid defense. Petitioner appears to mean that there was no defense stated because respondents never answered the petition. Summary disposition under MCR 2.116(C)(9) is appropriate where "[t]he opposing party has failed to state a valid defense to the claim asserted against him or her." MCR 2.116(C)(9); *Domako v Rowe*, 184 Mich App 137, 142; 457 NW2d 107 (1990), aff'd 438 Mich 347 (1991). However, respondents' reply brief was the first responsive pleading filed following this Court's reversal and remand to the trial court. Respondents were not required to state a defense before filing this response. Summary disposition would therefore not have been appropriate under MCR 2.116(C)(9).

## IV. FRAUD ON THE COURT

Respondent also argues that the trial court erred by failing to hold a hearing on his allegations of fraud on the court. We review a trial court's decision to hold an evidentiary hearing to determine whether there has been a fraud perpetrated on the court for an abuse of discretion. *Williams v Williams*, 214 Mich App 391, 399; 542 NW2d 892 (1995).

Petitioner asserts that because respondents argued that the PLRA precluded his suit, they perpetrated a fraud on the court. Fraud is "a knowing misrepresentation" or "knowing concealment of a material fact" made to induce another to his or her detriment. *Black's Law Dictionary* (10th ed). "A fraud is perpetrated on the court when some material fact is concealed from the court or some material misrepresentation is made to the court." *Matley v Matley (On Remand)*, 242 Mich App 101, 102; 617 NW2d 718 (2000).

In reversing and remanding petitioner's case to the trial court, this Court cited *Hayes*, 312 Mich App at 781-782, which holds that the Michigan PLRA does not exclude prisoners from seeking mandamus to force the Parole Board to consider a prisoner for parole. In *Hayes*, decided in 2015, the prisoner was seeking mandamus relief because the Parole Board was refusing to consider the prisoner for parole upon the completion of his minimum sentence. *Id.* at 782. However, petitioner is seeking mandamus for a reinstatement of parole and a change of his parole conditions. Respondents made a similar but not the same argument as the respondents did in *Hayes*, asserting that the PLRA precluded petitioner's requested relief. Petitioner failed to explain how respondents made a material misrepresentation or concealed a material fact and accordingly, the court did not abuse its discretion in failing to hold a hearing to explore petitioner's allegations of fraud on the court.

## V. DUE PROCESS AND FRAUDULENT MISREPRESENTATION

Petitioner argues that respondents made a fraudulent material misrepresentation and violated his due process rights when they conditioned his parole on his residence at KPEP. These claims are unpreserved. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999).

We review the proper interpretation and application of statutes de novo. *Hayes*, 312 Mich App at 778. Similarly, constitutional issues are reviewed de novo as a matter of law. *Thomas v Pogats*, 249 Mich App 718, 724; 644 NW2d 59 (2002). However, we review unpreserved claims of error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

The thrust of petitioner's argument stems from his assertion that the parole condition requiring him to reside at KPEP was a "fraudulent material representation" and a violation of due process.

"To prove a claim of fraudulent misrepresentation, or common-law fraud, a plaintiff must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury." *Robert v Saffell*, 280 Mich App 397, 403; 760 NW2d 715 (2008). The Parole Board has the authority to impose conditions on a prisoner's parole. MCL 791.236. One of petitioner's conditions was that he reside at KPEP. There is nothing false or misleading regarding this valid parole condition. Accordingly, petitioner's argument must fail because respondents did not make any fraudulent misrepresentations.

Next, petitioner argues that respondent's "fraudulent material representations" forced him to waive his rights, be treated by a psychologist, be placed in a psychiatric treatment program, and relinquish his rights to confidentiality, therefore making his order of parole null and void. However, petitioner fails to explain how any of these conditions of prison or parole constitute fraudulent misrepresentations. This Court is not under the obligation to rationalize a petitioner's position. *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority.").

Petitioner next asserts that he has a liberty interest protected by due process not to be subjected to "involuntary treatment that has stigmatizing consequences and mandatory behavior modifications." Both the Michigan and the United States Constitutions guarantee that a person may not be deprived of life, liberty, or property, without the due process of law. US Const, Am XIV; Const 1963, art 1, § 17. "Whether the due process guarantee is applicable depends initially on the presence of a protected property or liberty interest." *Hanlon v Civil Serv Comm*, 253 Mich App 710, 723; 660 NW2d 74 (2002) (quotation marks omitted). However, "prisoners do not shed all constitutional rights at the prison gate but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *Martin v Stine*, 214 Mich App 403, 419; 542 NW2d 884 (1995) (quotation marks omitted), quoting *Sandin v Conner*, 515 US 472; 115 S Ct 2293; 132 L Ed 2d 418 (1995). Further, the possibility of parole is not an interest protected by due process, and accordingly, placing its imposition on certain conditions does not implicate due process protection. *Glover v Parole Bd.*, 460 Mich 511, 520; 596 NW2d 598, 603 (1999) (explaining that the possibility of parole is a "mere hope" and not a benefit protected by due process). Parole is granted at the discretion of the Parole Board, and is not a

right. *Morales*, 260 Mich App at 39. Therefore, petitioner has no "right" to have his parole reinstated and his due process claims must fail because he has not shown deprivation of any constitutionally protected liberty interest.

## VI. ENFORCEMENT OF COURT RULES

Next, petitioner asserts that the trial court violated numerous court rules in order to prejudice him. "The interpretation and application of court rules . . . presents a question of law that is reviewed de novo." *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). We find no error.

First, petitioner asserts that the trial court acted in a biased manner against him. "A trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming the presumption." *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). Petitioner's bare assertion that the trial judge's actions were a "bias tactic in favor" of respondents does not overcome the heavy burden needed to surmount the presumption of impartiality.

Second, petitioner argues that the trial court allowed respondents two extra days to file a response to his petition for mandamus in order to prejudice him. Under MCR 2.108(A)(2), a respondent who is served by registered mail "must serve and file an answer or take other action permitted by law or these rules within 28 days after service." Here, it is true that respondents filed their reply to petitioner's petition for mandamus beyond the time limit provided by the court rules; however, it is also true that they served the filing on petitioner within the prescribed time limit and filed the reply with the court before petitioner complained of the late filing. A trial court has the "inherent power to control the movement of cases on its docket," *Banta v Serban*, 370 Mich 367, 368; 121 NW2d 854 (1963), and "[t]his Court will not disturb a trial court's exercise of that inherent power unless a party shows a clear abuse of discretion." *Persichini v Beaumont Hosp*, 238 Mich App 626, 642; 607 NW2d 100 (1999). Allowing respondents an extra two days to file a response was not an abuse of the court's discretion.

Importantly, the law favors the determination of claims on the merits, *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999), and the court rules "'must be construed to prevent absurd results, injustice, or prejudice to the public interest.'" *Hill v City of Warren*, 276 Mich App 299, 305; 740 NW2d 706 (2007), quoting *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999). Mandamus is an "extraordinary remedy" and writs are issued in the trial court's discretion. *Lee*, 235 Mich App at 331. Accordingly, it is logical that the trial court would choose to receive argument from both petitioner and respondents before making a ruling. Additionally, "absent a showing of prejudice resulting from noncompliance with the rules, any error is harmless." *Baker v DEC Int'l*, 218 Mich App 248, 262; 553 NW2d 667 (1996), rev'd in part on other grounds 458 Mich 247, 580 NW2d 894 (1998). Petitioner fails to show how a two-day delay of filing, especially when he was in possession of the reply, prejudiced him.

Third, petitioner argues that respondents failed to meet the requirements of MCR 2.111(C) and (E) because they did not number their paragraphs as petitioner did in his petition.

However, MCR 2.111(C) applies to responsive pleadings to complaints, not to petitions for mandamus.

Fourth, petitioner argues that he submitted a motion for reconsideration that was never entered and that every letter he sends to the court's clerk is ignored. Beyond bald assertions in his brief and affidavits filed by petitioner, there is no record of any such filing and no evidence in the Register of Actions. Furthermore, petitioner appealed the order he was seeking reconsideration on and had his case reversed and remanded. Similarly, petitioner argues that he submitted a petition for a personal protection order that was never entered; however, again he submits no proof of such an action and no evidence appears in the record.

Fifth, petitioner argues that the trial court erred by not holding a hearing on his motion for a temporary restraining order. A temporary restraining order may only be entered if "it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay." MCR 3.310(B)(1)(a). There is no requirement that the court hold a hearing on the matter. MCR 3.310.

Sixth, petitioner argues that respondents did not comply with the trial court's order to respond to his motion for summary disposition and motion for temporary restraining order and preliminary injunction within 30 days. However, the record shows that respondents filed their brief within the ordered 30 days. Furthermore, petitioner takes issue with the fact that respondents also responded to his petition for mandamus in their response, arguing that they did not have a right to do so under MCR 2.118(A)(2). However, MCR 2.118(A)(2) relates to amended pleadings; respondent's answer to petitioner's motion for summary disposition was not an amended pleading and therefore this rule does not apply.

Finally, petitioner argues that he filed a motion for appointment of counsel, which was never entered and that he was forced to file his motion for summary disposition twice because of the court's refusal to acknowledge his filings. However, the record shows that petitioner's motion for appointment of counsel was entered. Similarly, petitioner's motion for summary disposition was originally filed on July 18, 2016, and again on October 13, 2016. This double filing appears to be based on petitioner's general unhappiness with the lack of immediate response from the trial court, not on any wrongdoing by the lower court.

## VII. MOTION FOR TEMPORARY RESTRAINING ORDER

Petitioner argues that the trial court's denial of his motion for a temporary restraining order was in error. We review a trial court's decision to grant injunctive relief for an abuse of discretion. *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 110; 593 NW2d 595 (1999). A court abuses its discretion if its decision is "outside the range of reasonable and principled outcomes." *Barrow v Detroit Election Comm'n*, 305 Mich App 649, 662; 854 NW2d 489 (2014). "The interpretation and application of court rules . . . presents a question of law that is reviewed de novo." *McAuley*, 457 Mich at 518.

"Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Jeffrey v Clinton Twp*, 195 Mich App 260, 263-264; 489 NW2d 211 (1992). Under the court

rules, a temporary restraining order may be granted, "only if it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result . . . ." MCR 3.310(B)(1)(a). This is separate from the four-part analysis required to issue a preliminary injunction. *State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 157-158; 365 NW2d 93 (1984).

Petitioner first argues that he was entitled to an interview or a hearing before his motion was denied pursuant to MCR 3.705. However, MCR 3.705 applies to personal protection orders, not temporary restraining orders. MCR 3.705. Personal protection orders are granted in accordance with MCL 600.2950 and MCL 600.2950a. MCL 600.2950 applies to domestic personal protection orders, and MCL 600.2950a(31) specifically states that "[a] court shall not issue a personal protection order . . . if the petitioner is a prisoner." Furthermore, there is no requirement that the court hold a hearing on a motion for a temporary restraining order. MCR 3.310.

After review of petitioner's motion for temporary restraining order, it is apparent that the trial court did not abuse its discretion in denying him relief. Petitioner's "irreparable harm" arguments were based on his arguments, dismissed above as meritless, that his parole was illegally conditioned on his residence at KPEP and his completion of sex offender programming. Other irreparable harm was based on alleged harassment during sex offender programming and "stalking" by psychologists who were "verbally attacking" him and "stating [that he thought] he kn[ew] everything." Further, he asserted that being required to participate in sex offender programming and psychiatric treatment in order to reobtain his previous parole status was coercion and causing him emotional distress. Finally, he argued that he was facing irreparable harm because being detained in prison "creates emotional distress and is a threat to [his] life." Despite being unhappy with his prison conditions and his mental health treatment, petitioner did not articulate how he was suffering a real or imminent danger of irreparable injury. MCR 3.310(B)(1)(a). Accordingly, the trial court did not abuse its discretion in denying petitioner's motion for a temporary restraining order.

## VIII. DAMAGES

Petitioner argues that he is entitled to damages. However, because he has been denied all other relief, damages are not appropriate.

## IX. CONCLUSION

Petitioner was not entitled to mandamus relief, summary disposition, or a temporary restraining order or preliminary injunction. We affirm the trial court's order.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto

-10-