*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SWB,

                Petitioner-Appellee,

v

KJP,

                Respondent-Appellant.

UNPUBLISHED
March 13, 2026
10:57 AM

No. 375010
Washtenaw Circuit Court
LC No. 24-002429-PH

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

Respondent, KJP, appeals the trial court's issuance of a personal protection order (PPO) to petitioner, SWB, on February 5, 2025 following a hearing on that date, and the subsequent denial of respondent's timely motion for reconsideration. On appeal, respondent contends the trial court: (1) abused its discretion in denying its authority to consider respondent's motion for reconsideration of the issuance of the PPO; (2) violated respondent's right to due process in permitting petitioner to amend the allegations supporting his petition at the MCR 3.705 hearing; and (3) abused its discretion by granting a PPO where petitioner did not allege facts that constitute "stalking" as defined by MCL 750.411h. We affirm.

## I. FACTUAL BACKGROUND

Petitioner brought the present action for the issuance of a personal protection order (PPO), via a November 27, 2024 ex parte petition alleging that:

- on October 1, 2024, respondent, as one of a group of anti-landlord activists at an Ypsilanti City Council meeting, "repeatedly body slammed [p]etitioner[,] attempting to block his path" to exit the meeting;

- on October 30, 2024, respondent led approximately 20 people to petitioner's residence where they then destroyed his children's Halloween pumpkins and threw toilet paper, eggs and tomatoes and other vegetables and launched bottle rockets at the home for more than 10 minutes; and

-1-

- on November 26, 2024, petitioner saw respondent twice while he was driving in a remote area.

On November 27, 2024, the trial court entered an order denying the ex parte PPO, finding the petition lacked sufficient facts demonstrating that "immediate and irreparable injury will occur because of the delay for notice of hearing or that notice itself will precipitate adverse action before an ex parte order can issue." The order advised petitioner of his right to a hearing on his petition within 21 days.

A hearing ultimately took place on February 5, 2025. In his testimony, petitioner stated that his first public interaction with respondent was on October 1, 2024, when he attended an Ypsilanti City Council meeting. According to petitioner, a number of anti-landlord activists attended this meeting, and respondent was a major instigator of that group's disrespectful, hostile, screaming and yelling conduct. Respondent screamed and yelled at petitioner that he evicted respondent at one point, that he was not part of the community, was a scumbag, and screamed "murderer" at him multiple times. Petitioner testified that this conduct embarrassed him, that these activists hyped each other up and got so unruly that "it became a dangerous scene, and the police had to be called," and the mayor terminated the city council meeting and kicked everyone out of city hall. According to petitioner, the only person that ended up being physically restrained by the police was respondent because respondent refused to leave the council chamber and continued yelling and screaming. Petitioner testified that the city manager recognized the crowd was so hostile toward him that he could not safely exit like everyone else and took petitioner to a back exit in the basement of city hall so he could "escape this hostile mob." These events caused petitioner to feel "frightened" and that he was "definitely in danger," because there were "at least 20 very hostile, angry, super hyped up people ready to physically attack me as soon as I left city hall," which is why the police responded and detained respondent.

Petitioner then testified that the next time he encountered respondent was at an October 15, 2024 Ypsilanti City Council meeting. Respondent's counsel objected to any testimony regarding events occurring on October 15, 2024, because the petition for PPO makes no allegations pertaining to that date. Notably, petitioner acknowledged that his petition listed the wrong date and that respondent's offensive physical contact with him and attempt to block his exit alleged therein actually occurred at the October 15, 2024 Ypsilanti City Council meeting, rather than on October 1, 2024. Respondent's counsel objected to such "new allegations" (i.e., changing the date respondent physically contacted and obstructed petitioner from October 1, 2024 to October 15, 2024), claiming a violation of due process, where respondent thereby was deprived of the opportunity to speak with potential witnesses who were at the October 15, 2024 Ypsilanti City Council meeting. The trial court overruled the objection, noting that such notice is necessary in criminal proceedings, but not in a non-emergency PPO hearing, and that respondent's due process right would be satisfied by respondent's counsel's ability to cross-examine the petitioner regarding the events of October 15, 2024.

Petitioner testified that at the October 15, 2024 city council meeting, the "angry mob" of anti-landlord activists came with musical instruments (mostly drums and drumsticks) and for approximately three hours they "physically beat on city hall to intimidate the people that were inside the meeting." He testified that "[i]t was truly terrifying," and that it was his impression that respondent, who was present, was the ringleader of the group. When he tried to leave the meeting,

respondent physically impeded, "bang[ed]" into him, and blocked him from leaving. Petitioner was then assisted by some police officers to exit the meeting. Once he exited city hall with a police officer, "at least 25 people tried to attack me," including respondent, who threw a full Mountain Dew bottle at him, and petitioner and the police officer retreated back to city hall and they were eventually able to leave the area in a police car, with the activists surrounding and rocking the car, trying to overturn it. Petitioner described these events as "scary," "terrifying," and testified that "I felt like I was being terrorized."

As to the allegations regarding the events of October 30, 2024, petitioner testified that he observed

> 25 masked attackers on my front lawn . . . . They threw more than 150 eggs, tomatoes, pumpkins, celery, apples, toilet paper, used -- used kitty litter at the front of my house. And I can see that they were carrying weapons. They had baseball bats, they had long pipes. They were chanting, screaming . . . "f*ck [petitioner]."

Petitioner checked on his minor children to make sure they were safe, his wife called the police, and he was standing inside his front door and was going to step outside to try to engage the individuals, when they began shooting "fireworks or some sort of explosion devices at me and at my house." He then went back into his house, called the police again, and the people dissipated into the neighborhood shortly thereafter.

While petitioner testified that he saw respondent in the crowd and recognized respondent screaming "f*ck [petitioner]" just as respondent had done at the city council meeting, respondent contrarily testified that respondent was at home with two children that entire night.

Petitioner likewise described the events of October 30th event as "terrorizing," "the worst thing that ever happened to me," "[m]y family was in grave danger and I . . . felt in grave danger," and since that event he: replaced his car because people were following him, hired "security people," and moved because of these threats to him and his family's safety. He and his family have also avoided attending public events because of these incidents and the threats of physical violence to which he and his family were subjected.

Finally, petitioner described unexpectedly seeing respondent in a rural area on November 26, 2024, which caused him to feel that he was being followed and stalked by respondent. Petitioner testified that at this time he saw respondent on a dirt road outside of a car arguing with someone inside the car, and that respondent gave him repeated menacing looks as he was driving by.

Respondent testified that respondent had previously leased premises from petitioner in 2014, but terminated the lease early due to harassment consisting of petitioner sending late fees that had not actually been incurred. Regarding the meeting on October 1, 2024, respondent said the city council took a break when the public comment became heated, after which respondent and others confronted petitioner with various complaints, including second-hand accounts of ceilings caving in at units petitioner rented out. When the meeting reconvened, respondent testified that the crowd was chanting and escalating its opposition to the resolution on the table, which resulted in the meeting finishing early, after which attendees were ordered out of the council room. After

being asked to leave a second time, respondent "replied to the police officer that I would leave when [petitioner] left." Respondent testified that, if everyone was being ordered to leave, it seemed proper that petitioner would likewise be required to leave. Police reacted by placing respondent in handcuffs, after which respondent had a conversation with the police chief, was released from the handcuffs, and left out the front door. Respondent testified that respondent was at home with children on October 30, 2024. Respondent recalled this date because respondent's spouse was working that evening until 10:00 p.m., and because an online activity log indicated that respondent spent the two-hour period between 8:00 p.m. and 10:00 p.m. watching videos on the internet. With regard to November 26, 2024, respondent testified that respondent may have been in the rural area referenced by petitioner or near that date; however, respondent essentially testified that any contact between respondent and petitioner would have been coincidental because respondent had traveled to that area for reasons completely unrelated to petitioner.

The trial court declined to hear the testimony of a witness for respondent whom respondent's counsel represented would testify that they did not see any physical contact or threatening behavior between respondent and petitioner at the October 1, 2024 city council meeting, stating, ad seriatim:

- "The decision that I make is not going to be based on any finding of fact that would indicate there was or was not physical contact on October 1st, so I don't think I need to hear from them, but please thank them for being here."

- "I'm not considering any physical contact from October 1st in making a decision."

- "The October 1st issue is not the basis for any decision I'm making."

The trial court granted the petition for PPO, noting three instances of conduct and that the October 30, 2024 incident in particular made a strong impression upon the court, and that petitioner was convincing in his testimony that respondent was among those present there. Regarding petitioner's earlier experiences with respondent, the trial court noted it was "not saying everything was true as [petitioner] presented it," but that they are "on two different sides of a politically charged position," and respondent is permitted to engage in the constitutional right to free speech, but that going to petitioner's family's home at night and shooting off fireworks and the like to scare and intimidate him and his family crosses the line. "And I do think that [petitioner] was targeted and harassed by a course of conduct from a group of people and . . . he has identified [respondent] as one of these people" and "I do find it to be harassing. I do find that he has, as any reasonable person, to be frightened" and "he's been frightened . . . since that [October 30th] occurrence."

On February 5, 2025, the trial court entered a PPO with an expiration date of July 6, 2025, which was then personally served on the respondent on that same date.[1] Notably, the PPO did not

---

[1] While the PPO has expired in the course of this appeal, "identifying an improperly issued PPO as rescinded is a live controversy, and thus not moot" for appeals purposes upon its expiration. *TM v MZ*, 501 Mich 312, 319; 916 NW2d 473 (2018).

bar respondent from attending Ypsilanti City Council meetings, but barred respondent from approaching petitioner if he is present at the meeting.

Respondent filed a timely motion for reconsideration contending the trial court committed "palpable error by granting the PPO on the basis of a single event," where MCL 600.2950(a) requires a "pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." The motion further asserted palpable error based on the court's misunderstanding that a Facebook post petitioner made stating that "no one can rattle me" occurred on September 29, 2024 rather than after the October 1, 2024 city council meeting, and that the trial court disregarded respondent's alibi testimony from the night of October 30, 2024. Petitioner filed a response to the motion for reconsideration noting his testimony at the hearing regarding "multiple events demonstrating a pattern of harassing and intimidating conduct by [r]espondent." The trial court thereafter entered an order denying the motion that provided, in pertinent part:

> Subchapter 3.700 of the Michigan Court Rules which governs Personal Protection Proceedings does not provide for motions for reconsideration. Respondent has the right to appeal the ruling under MCR 3.709. Respondent may also file a motion to modify or terminate the PPO if good cause exists to warrant the relief requested. Accordingly, Respondent's Motion to Reconsider is DENIED.

Respondent then filed a timely appeal of right.

## II. STANDARD OF REVIEW

The granting of a PPO is "within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021) (quotation marks and citation omitted). See also *Hayford v Hayford*, 279 Mich App 324, 325; 769 NW2d 324 (2008) ("We review for an abuse of discretion a trial court's determination whether to issue a PPO because it is an injunctive order."). A trial court's evidentiary rulings are likewise reviewed for an abuse of discretion. *Sherry v E Suburban Football League*, 292 Mich App 23, 32; 807 NW2d 859 (2011). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *SP*, 339 Mich App at 176 (quotation marks and citation omitted). "A court necessarily abuses its discretion when it makes an error of law." *TT v KL*, 334 Mich App 413, 438; 965 NW2d 101 (2020).

We review constitutional issues de novo. *Id*. We likewise review issues of statutory interpretation de novo. *Hayford*, 279 Mich App at 325.

We review a trial court's findings of fact, including such findings as they pertain to a PPO, for clear error. *Id*. Under the clear-error standard, we give deference to the lower court and hold that the court clearly erred only if we are "left with the definite and firm conviction that a mistake has been made." *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008) (quotation marks and citation omitted).

> Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of

the trial court to judge the credibility of the witnesses who appeared before it. [MCR 2.613(C)].

The trier of fact is in the best position to consider the demeanor of each witness in weighing the credibility of their respective testimonies. See *SP*, 339 Mich App at 176.

## III. ANALYSIS

### A. MOTION FOR RECONSIDERATION OF A PPO ORDER

Respondent argues the trial court erred in finding that motions for reconsideration are not permitted in personal protection proceedings under subchapter 3.700 of the Michigan Court Rules. We agree.

Subchapter 2.000 of the Michigan Court Rules addresses "general provisions" pertaining to "civil procedure" and MCR 2.001 defines the applicability of rules to such proceedings as follows:

> The rules in this chapter govern procedure in all civil proceedings in all courts established by the constitution and laws of the State of Michigan, except where the limited jurisdiction of a court makes a rule inherently inapplicable or where a rule applicable to a specific court or a specific type of proceeding provides a different procedure.

Subchapter 3.700 of the Michigan Court Rules specifically addresses "personal protection proceedings" and MCR 3.701(A) defines the applicability of rules to such proceedings, in part pertinent to this appeal, as follows:

> Except as provided by this subchapter and the provisions of MCL 600.2950, MCL 600.2950a, and MCL 691.1801 to MCL 691.1821, actions for personal protection for relief against domestic violence or stalking and actions for extreme risk protection are governed by the Michigan Court Rules. Procedure related to personal protection orders against adults is governed by MCR 3.702 to MCR 3.709, and procedure related to extreme risk protection is governed by MCR 3.715 to MCR 3.722.

MCR 3.707(A) provides for motions to modify or terminate a PPO. However, looking to MCR 2.001, an action seeking a PPO is a civil proceeding, a motion for reconsideration is not inherently inapplicable based upon any limitation on the court's jurisdiction in personal protection proceedings, and there is no indication that a motion to modify or terminate a PPO is intended to supplant or foreclose a petitioner or respondent from filing a timely motion for reconsideration of

a PPO pursuant to MCR 2.119. A motion to modify or terminate a PPO seeks different relief pursuant to a different procedure than a motion for reconsideration.[2]

We accordingly conclude that the trial court erred in failing to substantively consider respondent's motion for reconsideration of the trial court's February 5, 2025 PPO order on the basis that subchapter 3.700 of the Michigan Court Rules did not specifically provide for such procedure. In next considering whether this error requires any substantive relief we turn to the harmless error rule, MCR 2.613(A), which provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

With regard to motions for reconsideration of a decision on a motion, MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

Contrary to respondent's motion for reconsideration, the transcript of the February 5, 2025 PPO hearing is clear that the trial court did not grant the PPO "on the basis of a single event." Rather, four instances of conduct were addressed at the hearing: the October 1, 2024 city council meeting, the October 15, 2024 city council meeting, the October 30, 2024 incident at petitioner's house, and the November 26, 2024 incident where petitioner encountered respondent on a road in a rural area. In granting the PPO, the trial court noted that multiple instances of conduct were addressed at the hearing, the October 30, 2024 incident in particular made a strong impression, and it expressly declared that the October 30, 2024 incident was not its sole basis for entry of the PPO. Rather, it held that "[petitioner] was targeted and harassed by a course of conduct from a group of people and—and he has identified [respondent] as one of these people," and further, that "there is a course of conduct. I do find it to be harassing. I do find that he has, as any reasonable person, to be frightened." Further, petitioner's response to the motion for reconsideration noted

---

[2] Although not dispositive to this issue, we note that, while we have been unable to locate any caselaw directly addressing whether a motion for reconsideration is procedurally permitted in a PPO proceeding, there are numerous instances in our appellate jurisprudence of motions for reconsideration in PPO proceedings being considered without objection or inquiry as to their procedural propriety. See, e.g., *Brown v Rudy*, 324 Mich App 277, 287; 922 NW2d 915 (2018); *Lamkin v Engram*, 295 Mich App 701, 710; 815 NW2d 793 (2012).

his testimony at the hearing regarding "multiple events demonstrating a pattern of harassing and intimidating conduct by [r]espondent."

While the motion for reconsideration also asserted that the trial court misunderstood that petitioner posted on Facebook that "no one can rattle me" on September 29, 2024, rather than immediately after the October 1, 2024 city council meeting, petitioner testified that he "felt frightened" and "was definitely in danger" at that meeting. Notably, respondent's counsel did not object or seek to correct the trial court's misunderstanding when he moved to admit printed copies of two Facebook posts at the PPO hearing and the Court stated "So, the first one is a post from September 29th . . . ." An issue is not properly preserved for appeal if it is raised for the first time in a motion for reconsideration.[3] *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 316; 885 NW2d 892 (2015). Even considering that petitioner made that Facebook post after the October 1, 2024 city council meeting rather than before it, the trial court noted that "[s]ince that time, he's had people come to his home on October 30th and he's testified today under oath that he believes [respondent] was among those people and he's been frightened since—since that occurrence."

Finally, respondent's motion for reconsideration claims it was palpable error for the trial court to disregard respondent's alibi testimony from the night of October 30, 2024. However, the trial court heard respondent's alibi testimony and concluded that petitioner "was convincing in his testimony" that respondent was among the people who attacked his home. "[T]he trial court is in the best position to determine the credibility of the parties, which will obviously include the testimony, demeanor, and motive of the petitioner." *Pickering v Pickering*, 253 Mich App 694, 792 n 3; 659 NW2d 649 (2002). In light of the trial court's unique position to consider the witnesses' live testimony, we cannot conclude that the trial court clearly erred in its factual finding, i.e., we cannot definitely, firmly conclude that the trial court was mistaken. *Jonkers*, 278 Mich App at 265.

Given the trial court's explication of its resolution of the matter at the PPO hearing and the foregoing analysis of respondent's arguments, we do not find that respondent would have been entitled to relief on a motion for reconsideration had it been substantively considered by the trial court. We accordingly find the error of the trial court in failing to substantively consider the motion for reconsideration was harmless and that allowing that order to stand is not inconsistent with substantial justice.

## B. AMENDING THE ALLEGATIONS OF A PPO PETITION AT THE MCR 3.705 HEARING

Respondent argues that by allowing petitioner to put forward evidence of the events that occurred at and immediately following the October 15, 2024 city council meeting (where that meeting was not referenced in the petition for PPO and the petitioner mistakenly indicated events from that meeting instead occurred at the October 1, 2024 city council meeting that was referenced

---

[3] Although this Court "may review an unpreserved issue if it is an issue of law for which all the relevant facts are available." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009).

in the petition), the trial court essentially allowed petitioner to amend his petition for PPO during the hearing and "surprise the respondent with unnoticed allegations." Respondent's counsel objected to such "new allegations" at the PPO hearing, claiming a violation of due process, where respondent was thereby deprived of the opportunity to speak with potential witnesses who were at the October 15, 2024 Ypsilanti City Council meeting. On appeal, respondent contends this violated respondent's constitutional due process rights; MCR 3.703(B)(2), which requires any petition for a PPO to "state with particularity the facts on which it is based"; and MCR 3.705(B)(2), which requires the petitioner to "serve on the respondent notice of the hearing along with the petition . . . ."

The due-process clauses of both the United States and Michigan Constitutions serve to ensure that government cannot deny people "life, liberty, or property without due process of law." US Const, Am XIV; Const 1963, art 1, § 17. "Procedural due process limits actions by the government and requires it to institute safeguards in proceedings that affect those rights protected by due process, such as life, liberty, or property." *Kampf v Kampf*, 237 Mich App 377, 382; 603 NW2d 295 (1999). "Due process is a flexible concept that applies to any adjudication of important rights." *Thomas v Pogats*, 249 Mich App 718, 724; 644 NW2d 59 (2002). It requires procedural protections, including fundamental fairness, based upon what the individual situation demands. *Id*. Fundamental fairness includes: (1) "consideration of the private interest at stake," (2) "the risk of an erroneous deprivation of such interest through the procedures used," (3) "the probable value of additional or substitute procedures," and (4) "the interest of the state or government, including the function involved and the fiscal or administrative burdens imposed by substitute procedures." *Dobrzenski v Dobrzenski*, 208 Mich App 514, 515; 528 NW2d 827 (1995). "Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker." *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). A full trial-like proceeding is not necessary in providing "an opportunity to be heard." *Id*. Rather, it requires a hearing so as to provide a party with the opportunity to learn of and respond to the evidence. *Id*.

The petitioner has the burden of proof to demonstrate reasonable cause for the issuance of a PPO. *Hayford*, 279 Mich App at 326.

> When making that determination, the circuit court is not limited to the four corners of the petition itself; rather, it must consider the testimony, documents, and other evidence proffered to determine whether a respondent engaged in harassing conduct. Nothing in the statute or court rule suggests that the circuit court is limited to considering the incidents alleged in the PPO petition. Instead, our court rules specifically *require* the circuit court to go beyond the PPO petition and either interview the petitioner or provide an evidentiary hearing. [*Lamkin v Engram*, 295 Mich App 701, 711; 815 NW2d 793 (2012).]

In light of this authority, respondent has not demonstrated a violation of respondent's due process rights process and notice requirements for the issuance of a PPO under the Michigan court rules. Respondent was served with a PPO petition that asserted, in part, that respondent engaged in offensive physical contact with and obstructed petitioner as he was attempting to exit a city council meeting. Petitioner testified at the hearing on the PPO petition that respondent's offensive physical contact with and obstruction of him occurred at an October 15, 2024 city council meeting,

rather than at an October 1, 2024 city council meeting as alleged in the petition. The trial court overruled respondent's counsel's objection to this correction and permitted petitioner to offer this testimony and be cross-examined by the respondent thereon. Respondent likewise had the opportunity to testify regarding these allegations, and notably did not refute petitioner's claim that respondent engaged in offensive physical contact with and obstruction of petitioner at the October 15, 2024 city council meeting. Furthermore, respondent was afforded the additional procedural safeguards of being able to file a motion to rescind or modify the PPO within 14 days of being served with notice or receiving actual notice of the PPO, but respondent did not utilize that opportunity. MCL 600.2950a(13); MCR 3.707(A).[4] The relevant PPO statute and court rules provide for notice and the opportunity to be heard,[5] and this Court has held that these procedural safeguards satisfy the requirements of procedural due process. *Kampf*, 237 Mich App at 383-386. We therefore find the procedural due process and notice requirements for the issuance of a PPO under the Michigan court rules were satisfied in this case.

### C. WHETHER ALLEGED FACTS CONSTITUTE "STALKING" AS DEFINED IN MCL 750.411h OR MCL 750.411i

Finally, respondent contends petitioner did not comply with MCL 600.2950a where he did not "allege[] facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code . . . ." MCL 600.2950a(1). Respondent argues that the trial court erroneously "extrapolated a single event (October 30) into a 'course of conduct' only because [respondent] and [petitioner] have a 'prior history' of political opposition" and further, that "multiple events must evidence a continuity of purpose" which is absent from the present record. We disagree.

As previously noted, in determining whether to issue a PPO pursuant to MCL 600.2950a, the trial court is not limited to the allegations of the petition, but rather, "must consider the testimony, documents, and other evidence proffered to determine whether a respondent engaged in harassing conduct." *Lamkin*, 295 Mich App at 711.

In part pertinent to the present appeal, MCL 600.2950a(1) provides:

Except as provided in subsections (27), (28), and (30), by commencing an independent action to obtain relief under this section, by joining a claim to an action, or by filing a motion in an action in which the petitioner and the individual to be restrained or enjoined are parties, an individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin an individual from engaging in conduct that is prohibited under section 411h, 411i, or

---

[4] As already discussed, respondent did seek timely reconsideration of the PPO pursuant to MCR 2.119(F), but did not seek to provide the court with evidence rebutting the allegation that respondent offensively physically contacted and obstructed petitioner at the October 15, 2024 hearing at that time and, as noted above, the trial court's failure to substantively consider that motion was harmless error.

[5] See MCL 600.2950a(13), (14), and (18); MCR 3.705(A)(4); MCR 3.707(A).

411s of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s. A court shall not grant relief under this subsection unless the petition alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s.

MCL 750.411h(1) defines "harassment" and "stalking":

(d) "Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

(e) "Stalking" means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

MCL 750.411h(1) defines "course of conduct" and "unconsented contact":

(a) "Course of conduct" means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose.

* * *

(f) "Unconsented contact" means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

(i) Following or appearing within the sight of that individual.

(ii) Approaching or confronting that individual in a public place or on private property.

(iii) Appearing at that individual's workplace or residence.

(iv) Entering onto or remaining on property owned, leased, or occupied by that individual.

(v) Contacting that individual by telephone.

(vi) Sending mail or electronic communications to that individual.

(vii) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

MCL 750.411i sets forth identical definitions of "stalking," "harassment," and "course of conduct."

MCL 750.411s(1)(b) addresses "post[ing] a message through the use of any medium of communication . . . without the victim's consent" (such as via a computer or the internet) "intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested," and is not at issue in the present case.

In the present case, as described above, the ex parte PPO petition alleged three instances of conduct, October 1, 2024, October 30, 2024, and November 26, 2024. The ex parte petition was denied, and at the subsequent hearing on the petition, while petitioner presented evidence of four separate instances of conduct, on October 1, 2024, October 15, 2024, October 30, 2024, and November 26, 2024, the trial court referred to only three instances of conduct in granting the petition for PPO. The trial court noted that the October 30, 2024 incident at petitioner's home described in detail earlier in this opinion in particular made a strong impression upon the court, and that petitioner was convincing in his testimony that respondent was among those present. While the trial court twice indicated it would not consider any purported physical contact from October 1st in making its decision (where petitioner testified that he mistakenly alleged in his petition that respondent made offensive physical contact with and obstructed him on October 1st rather than on October 15th) it then stated, "[t]he October 1st issue is not the basis for any decision I'm making."

However, respondent's testimony did not refute petitioner's testimony regarding what transpired at the October 15th city council meeting. Petitioner's uncontested testimony regarding that day included:

- respondent physically impeded petitioner, "bang[ed]" into him, and blocked him from leaving;

- petitioner, upon exiting city hall with police assistance, was attacked by at least 25 people, including respondent, a full Mountain Dew bottle was thrown at him, and he and the officer withdrew back into city hall and left via a police car that the activists also attacked and tried to overturn; and

- petitioner found these events "scary," and "terrifying," and he "felt like [he] was being terrorized."

Finally, petitioner testified that, after three earlier instances of conduct with respondent, he encountered respondent in a rural area on November 26, 2024, where he would never expect to see respondent, giving him menacing looks as he drove by, which caused him to feel that he was being followed and stalked.

We find no abuse of discretion in the trial court's finding that these three separate instances of conduct by respondent on October 15, 2024, October 30, 2024, and November 26, 2024 "constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code . . . ." MCL 600.2950a(1). Respondent speculates that the trial court did not specifically reference the November 26th incident in its ruling (beyond it being one

of the three instances of conduct on which it was basing its ruling), because it was not sufficient to "cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested . . . ." MCL 750.411h(1)(e). However, this conduct closely followed the earlier more severe instances of harassment on October 15th and October 30th, and, given that context, and in light of petitioner's testimony, we find the trial court did not abuse its discretion in finding that it constitutes "harassment," i.e., "continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(d). Accordingly, viewed in context, we are not definitely and firmly convinced that the trial court made a mistake by finding that the November 26th unconsented contact would make a reasonable person feel threatened or otherwise suffer emotional distress. The trial court accordingly did not abuse its discretion by including respondent's November 26, 2024 conduct in finding "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested . . . ." MCL 750.411h(1)(e). Furthermore, in any event, the required "course of conduct" need only comprise two "separate noncontinuous acts evidencing a continuity of purpose," and the acts of October 15th and October 30th alone meet that threshold.

Respondent contends the PPO threatens respondent's First Amendment right to speech and "undermines democracy by inviting political opponents to weaponize PPO petitions." However, this issue is waived because respondent failed to raise it in respondent's statement of questions presented. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019). Further, in any event, the trial court was appropriately sensitive to these First Amendment concerns where it ruled that respondent has a right to be present at the city council meetings and "participate in any protest that's permitted by the rules that are established and the laws that are in effect"; noted that "peaceful protests are permitted, but violent protests are not"; and ruled that "[r]espondent is not prohibited from entering [Ypsilanti] city hall [and] attending Ypsilanti city council meetings, but may not approach petitioner if he is present at a meeting."

The trial court's PPO is affirmed.

/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett
/s/ Matthew S. Ackerman

-13-